ACME ENGINEERS, Inc., Appellant,

v.

FOSTER ENGINEERING COMPANY,
Appellee.

No. 16951.

United States Court of Appeals
Fifth Circuit.

April 7, 1958.

Howard S. Hoover, Carroll R. Graham, Houston, Tex., for appellant.

Alvin M. Owsley, Jr., Houston, Tex., Baker, Botts, Andrews & Shepherd, Houston, Tex., of counsel, for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment quashing service and dismissing an action without prejudice on the ground that the court had not acquired and could not acquire jurisdiction over the defendant, a foreign corporation.

The action was brought to recover commissions allegedly due plaintiff from sales in Texas of defendant's products. Federal jurisdiction was based on diversity of citizenship. 28 U.S.C.A. § 1332. Acme Engineers, Inc. was incorporated under the laws of Texas, while Foster Engineering Co. was organized in New Jersey. The attempted service of process was on Gulf States Specialties, Inc., a Texas corporation, which acted in the capacity commonly known as a "manufacturer's representative or agent" for Foster.

The facts were developed by affidavits and deposition, and are without material dispute. Foster manufactures and sells various types of engineering equipment, mostly for the petroleum and chemical industries. It does not have, and never has had, a permit to do business in Texas, and has not appointed an agent for service of process in that State. The complaint alleged that, from 1947 until some-

time in 1955, Acme had sold and promoted the sale of Foster's products throughout the State of Texas, excepting the Panhandle. In 1954 and 1955, it made four sales for which unpaid commissions were claimed in the amount of $8,948.97.

Gulf States' first contact with Foster occurred the latter part of 1955 at an exhibit of Foster's products during the oil exposition at the Coliseum in Houston, Texas. Subsequently, the General Sales Manager for Foster came to Houston and reached a verbal agreement with Gulf States under which it solicits sales on a commission basis for Foster's products in Texas, except in the Panhandle and except to municipalities. Another company handles sales to cities. Gulf States has exclusive representation on some but not all of the equipment which Foster manufactures. The verbal contract between Foster and Gulf States is terminable at will by either party. The stock of Gulf States is owned entirely by Mr. Schoonover and Mr. Mercer and their families. Gulf States does not own any stock of Foster, nor does Foster own any stock of Gulf States. Gulf States is a manufacturer's representative in Texas for eight other companies, whose products do not compete with each other nor with those of Foster. About ten per cent of Gulf States' business concerns Foster products. Gulf States employs two men, Schoonover and Mercer, and two office secretaries.

When a customer is induced to purchase a Foster product, he issues a purchase order made out to Foster which is either turned over or sent to Gulf States, or mailed directly to Foster. Payment for the product goes directly to Foster. Gulf States gives no opinion on credit risks. After a product is ordered, Gulf States frequently receives inquires from the purchaser as to when delivery can be expected and what progress is being made, and, after making inquiries of Foster, Gulf States advises the purchaser with respect to such matters. Some of the products have to be specially made for particular purchasers. Schoonover is a graduate engineer himself and makes use of his professional knowledge, but when there is some doubt in his mind as to the need for or suitability of certain equipment, Foster sends down an engineer to look over the plant. Complaints are sometimes made to Gulf States concerning malfunction of a product, and occasionally Schoonover goes out and looks at the machinery, but makes no recommendation. He simply notifies Foster describing what he has found. Neither Gulf States nor Schoonover receive compensation for this informational service. Sometimes a Foster employee comes into Texas and makes repairs on equipment. In such cases Gulf States exercises no supervision.

Gulf States mails out at its expense promotional literature furnished by Foster. It tries to follow up fairly promptly inquiries from prospective customers passed on to it by Foster. The Foster products are advertised in the "yellow pages" of the Houston Telephone Directory and, following that advertisement, the name, address and telephone number of Gulf States is listed. Foster pays for that advertisement. The General Sales Manager for Foster has called upon Gulf States at least six times in the past eighteen months. He has given Gulf States advice as to how to increase sales. The approximate volume of sales of Foster products made by Gulf States in 1956 was $50,000.00. A member of the Foster Engineering Department has also called upon Gulf States. He has been interested in the engineering phase of the business and he occasionally confers with Gulf States in regard to some problem a customer may have. If requested by Foster to inspect some product with which a customer has difficulty, Gulf States normally does so in order both to retain a satisfied customer and to satisfy Foster.

The questions presented are whether Foster was subject to the jurisdiction of the United States District Court for the Southern District of Texas, and whether jurisdiction was acquired by serving process for Foster on Gulf States.

Articles 1529 and 1536 of the Revised Civil Statutes of Texas require any foreign corporation "desiring to transact or solicit business in Texas, or to establish a general or special office in this State", to secure a permit under penalty of denial of its right to maintain any suit in Texas and forfeiture of from $100.00 to $5,000.00 for each month or fraction thereof it shall transact such business. The Texas Supreme Court has held that, within the meaning of those articles, a single transaction will constitute the doing of business.[1] When Foster sent agents into Texas to make repairs on equipment it may have violated those articles, but no attempt has been made to penalize it nor has it secured a permit.

The Texas statutes do not affirmatively require as a condition to the service of process on a foreign corporation that it be doing business in the State. See Davis v. Asano Bussan Co., 5 Cir., 1954, 212 F.2d 558, 563. The only Texas statute directly applicable is one specifying the agents or persons on whom process may be served, Article 2031 of the Revised Civil Statutes of Texas:

"In any suit against a foreign corporation, joint stock company or association, or acting corporation or association, pending or hereafter filed in this State, to which any foreign corporation is a party or is to be made a party, process may be served on the President, Vice-President, Secretary, Treasurer, General Manager, or upon any local or travelling agent or traveling salesman of such corporation, joint stock company or association, or acting corporation or association in this State. Acts 1885, p. 79; Acts 1919, p. 181; G.L. Vol. 9, p. 699; Acts 1935, 44th Leg., 2nd C.S., p. 1688, ch. 431, § 1."

The district court thought that this case was controlled by Robbins v. Benjamin Air Rifle Co., 5 Cir., 1954, 209 F.2d 173, 177, where Chief Judge Hutcheson, speaking for this Court, summarized the holding as follows:

" * * * In short, every case which has passed upon the question, including the International Shoe Co. case, [International Shoe Co. v. State of Wash. 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95] and the Gray case, [Gray v. Ward Tex.Civ. App., 145 S.W.2d 650], on which appellant relies, has declared that something more than the mere solicitation of orders for goods to be shipped into a state is necessary in order to make a foreign corporation amenable to service of process in the state and 'It is this extra quantum of activity which constitutes doing business so as to render it so amenable.'

"Considering the facts of this case, in the light of these principles as laid down and applied in the authorities, including particularly Gray v. Ward, we think it perfectly clear that on the record in this case Greer was nothing more than a manufacturer's representative and a solicitor of orders and that he did none of the things of a local nature which are required, and have been held, to be sufficient to bring a foreign corporation into the state for service." 209 F.2d at pages 177–178.

Judge Hutcheson went on to note that the controversy in that case did not arise out of business done in the State, and that,

" * * * the fact that the suit is concerned with matters arising out of acts of the company or its representative in the state, has sometimes been given weight both in legislative acts and in court decisions sufficient to tip the scale in favor of finding that the defendant was present in the state for service." 209 F.2d at page 178.

---

1. Normandie Oil Corporation v. Oil Trading Co., 1942, 139 Tex. 402, 163 S.W.2d 179, 182; see also Davis v. Asano Bussan Co., 5 Cir., 1954, 212 F.2d 558, 564; Glo Co. v. Murchison, 5 Cir., 1954, 208 F.2d 714, rehearing denied, 5 Cir., 1954, 210 F.2d 372.

The present action does arise from sales of Foster's products in Texas. There are other material distinctions between this case and the Robbins case, supra. For example, if a customer complained to Gulf States, Schoonover would inspect the product and advise Foster of what he saw and occasionally of the cause of the difficulty. Actual repairs on equipment in Texas were made on some occasions by employees of Foster. On other occasions employees of Foster came into Texas and inspected the purchaser's plant before the sale was made. These were acts of a local nature which were not present in the Robbins case, supra.

■ In Lone Star Package Car Co. v. Baltimore & O. R. Co., 5 Cir., 1954, 212 F.2d 147, 153, note 3, we expressed the hope that the question raised by Judge Connally in his excellent opinion for the district court, Insurance Co. of North America v. Lone Star Package Car Co., 107 F.Supp. 645, 654, as to whether the state statute imposes any greater jurisdictional burden than that imposed by the federal cases testing constitutionality, might be authoritatively settled by the highest state court, the Supreme Court of Texas. That has not been done, and is difficult to be accomplished without undue risk in view of the Texas rule that a defendant cannot appear specially without submitting itself to the jurisdiction of the court.²

Comment has been made that Texas has no statutory requirement that a foreign corporation be doing business in the State before it is subject to suit in Texas.

The Court of Civil Appeals of Texas in Gray Co. v. Ward, 1940, 145 S.W.2d 650, 653, stated the rule in terms of the standards then set up by the Supreme Court of the United States. Clearly, if the facts in the instant case should be tested by the current standards required by the Supreme Court of the United States, they satisfy the due process clause of the Constitution. From its earliest holdings that a corporation could have no legal existence beyond the boundaries of the sovereignty which created it and, hence, was suable only in the state of its organization,³ through the "presence" or "doing business" rule referred to in the Gray case, supra, the federal rule has now evolved simply to "traditional notions of fair play and substantial justice;"⁴ and indeed to what may seem the extreme limits of that concept.⁵

■■ The closer question, we think, is whether process for Foster could be served on Gulf States. Article 2031 of the Revised Civil Statutes of Texas quoted earlier in this opinion designates in very broad terms the persons upon whom process may be served, including "or upon any local or travelling agent or travelling salesman of such corporation." A corporation can be an agent for service.⁶ In the Gray case, supra, it was clearer that Sampson was a proper agent for service because Sampson himself serviced the equipment, made inspections, adjustments, repairs, and recommendations for replacement of parts. The discussion of the question in that case is, however, illuminating:

2. See Rules 121, 122, 123, Texas Rules of Civil Procedure; National Housing Agency v. Orton, Tex.Civ.App., Beaumont, 1947, 202 S.W.2d 243, 255; 4 Texas Jurisprudence, Appearance, Sections 3, 12 and 27; York v. Texas, 137 U.S. 15, 11 S. Ct. 9, 34 L.Ed. 604, affirming York v. State, 73 Tex. 651, 11 S.W. 869.

3. Bank of Augusta v. Earle, 1839, 13 Pet. 519, 38 U.S. 519, 588, 10 L.Ed. 274; Louisville, Cincinnati & Charleston R. Co. v. Letson, 1844, 2 How. 497, 43 U.S. 497, 555, 11 L.Ed. 353; Marshall v. Baltimore & Ohio R. Co., 1853, 16 How. 314, 57

U.S. 314, 14 L.Ed. 953; see, 11 Tex.Jur., Corporations, § 474, p. 141.

4. International Shoe Co. v. Washington, 1945, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95.

5. McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223, reversing McGee v. International Life Ins. Co., Tex.Civ.App., Galveston, 1956, 288 S.W.2d 579.

6. Advance-Rumely Thresher Co. v. Moss, Tex.Civ.App., 1919, 213 S.W. 690, 694; Alley v. Bessemer Gas Engine Co., 5 Cir., 1919, 262 F. 94, 96.

"It appears to us that the testimony in this case discloses that Sampson was a proper agent for service in this cause. Justice Cardozo, in the case of Tauza v. Susquehanna Coal Co., supra [220 N.Y. 259, 115 N.E. 915, 918], said: 'If the persons named are true agents, and if their positions are such as to lead to a just presumption that notice to them will be notice to the principal, the corporation must submit.' It will be recalled that when Sampson was served with citation he immediately mailed said citation to the home office and did so voluntarily, and thereafter voluntarily submitted a list of names of reputable attorneys in Waco to the home office. Vilter Mfg. Co. v. Rolaff, 8 Cir., 110 F.2d 491. The fact that Sampson received his compensation in the form of commissions would not change his status as a traveling salesman, Hamberger v. Marcus, 157 Pa. 133, 27 A. 681, 37 Am.St.Rep. 719; In re Dexter, 1 Cir., 158 F. 788; nor would the fact that Sampson represented other manufacturers and received his compensation for such service solely on a commission basis change his status as a traveling salesman. In re National Marble & Granite Co., D.C., 206 F. 185; In re Roebuck Weather Strip & Wire Screen Co., D.C., 180 F. 497. We are therefore of the opinion that under Article 2031 of our Revised Civil Statutes of 1925 that Jim Sampson was such traveling agent or traveling salesman of such intervener corporation within the contemplation of said statute." Gray Co. v. Ward, supra, 145 S.W.2d 650, 654, 655.

The kind of reasoning employed by the Supreme Court of Texas in Milligan v. Southern Express, 1952, 151 Tex. 315, 250 S.W.2d 194, on the existence of agency relationship for venue purposes is applicable here. It was pointed out that the respondeat superior approach was inapt.

" * * * the presence in the county of a mere servant, for example, a salaried employee to clean out dirty trailers, does not create there an agency for venue purposes, even though *respondeat superior* would obviously apply." 250 S.W.2d at page 197.

The important consideration is whether the "travelling salesman" occupies such a responsible representative status as to make it reasonably certain that he will turn over the process to his company. That he actually has done so may be considered as in the Gray case, supra. Here, the evidence clearly established that Gulf States sought to please Foster and to look after Foster's best interests. Process served on Gulf States would almost inevitably reach Foster, and was actually so passed on. We conclude that process on Foster might be served on Gulf States.

The judgment is therefore reversed and the cause remanded for trial on its merits.

Reversed and remanded.