T. E. NICKLAS, Appellant,

v.

AJAX ELECTRIC COMPANY, Inc., Appellee.

No. 10781.

Court of Civil Appeals of Texas.

Austin.

June 15, 1960.

Rehearing Denied July 13, 1960.

Harris & Ball, Arlington, for appellant.

No appearance for appellee.

GRAY, Justice.

Appellant, T. E. Nicklas, a former representative or salesman for Ajax Electric Company, Inc. filed this suit against Ajax for unpaid commissions.

Ajax is a Pennsylvania corporation with its home office in Philadelphia and has never been issued a permit to do business in Texas. It manufactures heating furnaces for sale together with parts therefor.

Appellant's suit is founded on a written agreement between himself and Ajax wherein he is designated as representative for Ajax and its sole agent in the states of Texas, Louisiana and Oklahoma "for its industrial heat treating furnaces." Appellant was to be paid a commission based on the selling price of the individual units and a commission of five per cent on orders for spare parts. The agreement provided:

"(4) The Representative's services shall be available for performing any engineering service and maintenance in connection with furnace installations in the territory. The Representative shall also be responsible for starting and supervising the installation of all furnaces in the territory, as well as rendering continuing technical service after installation."

Appellant ceased to be the representative or salesman for Ajax and it had named or

appointed Southwest Engineering and Equipment Company, a Texas corporation with Fred Harmon as its president, as its representative or salesman.

Appellant alleged that Ajax was present and doing business in Texas through its agent Southwest and that service of citation may be had on said agent. Service of citation was had on Southwest.

On September 29, 1958, Michael J. McCloud, Jr., a practicing attorney, filed his request for:

"leave to appear before the Court as amicus curiae for the purpose of calling to its attention the fact that the Court is without jurisdiction to hear and determine the matters set forth in plaintiff's original petition on file in this cause for the reason that the named defendant above does not do business in the State of Texas, and proper service upon said above named defendant has not been obtained, and to await and serve the court's convenience as it may elect to avail itself of the service of your petitioner."

On the same day the trial court heard the request and entered the following order:

"leave requested by the said Michael J. McCloud, Jr., to appear before this Court in the capacity of amicus curiae for the purposes requested and for such other and further purposes as the Court may see fit to grant or extend, should be and the same is hereby granted in all things."

On the same day (September 29, 1958) the said attorney filed a suggestion of want of jurisdiction because Ajax does not do business in Texas "to enable the court to have jurisdiction over it" and because Southwest is not an agent of Ajax for service. This pleading was sworn to by McCloud on September 27, 1958.

At a hearing before the trial court evidence was heard, the suggestion of the amicus curiae was sustained and the cause was dismissed at appellant's cost.

Appellant's two points are that the trial court erred in finding that it had no jurisdiction over Ajax and in failing to find that Ajax had entered an appearance.

It is our opinion that the second point must be sustained. Such holding disposes of the first point.

At the hearing the amicus curiae called two witnesses. The first was Mr. Means, sales engineer for Southwest and assistant to its president. On cross examination he testified that when Southwest received the citation, above mentioned, that it was sent to Ajax and that Ajax "told us that we would cooperate with Mr. McCloud." The second witness, Mr. Harmon, president of Southwest, testified that he received the citation and immediately sent it to Ajax; that he called Ajax on the phone and talked to them about "this" lawsuit and was instructed to cooperate fully with Mr. McCloud.

In Burger v. Burger, 156 Tex. 584, 298 S.W.2d 119, 120, the court said:

"A true amicus curiae is without interest in the litigation in which he appears. He is a 'bystander' whose mission is to aid the court, to act only for the personal benefit of the court. There are many authorities, but we deem it adequate to cite only a few." Authorities cited.

The record does not show any direct contact between Ajax and Mr. McCloud but it does show that he was known to Ajax, that it adopted his action and that it gave instructions to the officers of Southwest to cooperate fully with him. It also shows that two days prior to asking and being granted leave to appear as amicus curiae Mr. McCloud swore to a pleading suggesting lack of jurisdiction over Ajax. This pleading was filed on the date leave was granted to appear as amicus curiae. These facts show that the interest of Mr. McCloud in the litigation was aligned with

Ajax and was adopted by it. It shows he was not merely a bystander acting only for the personal benefit of the court.

The fact that leave was asked and was granted to Mr. McCloud to appear as amicus curiae does not prevent the facts supra from showing an appearance by Ajax because those facts show an appearance by Ajax through an attorney with whom it gave instructions for full cooperation in the lawsuit.

Amicus curiae cites, among other authorities, our own opinion in Roper v. Compania De Perforaciones Y. Servicio S. A., Tex.Civ.App., 315 S.W.2d 30, 34. Er. ref., n. r. e. The application for leave to appear as amicus curiae and the order granting leave to so appear in the above cause and the application and order in this cause are similar. However the facts are different. In the above cause we said that under facts different from the facts there "that an amicus curiae appearance may constitute a general appearance." The facts in the case now before us constitute such general appearance by Ajax and its submission to the jurisdiction of the court for all purposes.

It is our opinion that the facts before us show that McCloud was acting for the interest of Ajax rather than "for the personal benefit of the court" and that he asked and obtained an order and judgment of the court issued in the exercise of its judicial functions and that Ajax was in court for the exercise of all such judicial powers as the court was authorized to exercise in the suit. Burger v. Burger, supra, citing Pacific American Gasoline Co. of Texas v. Miller, Tex.Civ.App., 61 S.W.2d 1024. To hold otherwise under the facts here would permit the office of amicus curiae to be subversed to the use of a litigant in the case.

The judgment entered by the trial court was error. Accordingly that judgment is reversed and the cause is remanded with instructions that it be reinstated on the docket for a trial on its merits.

Reversed and remanded with instructions.

HUGHES, Justice (concurring).

If the majority opinion stands, the Trial Court, when it most needs a friend, will find none available.

I am also of the opinion that the majority holding is in conflict with our decision in Roper v. Compania, Tex.Civ.App., 315 S.W.2d 30, writ ref., N.R.E.

I find it advisable to copy more fully from the record than does the majority.

The application of Mr. McCloud to appear as amicus curiae reads:

"Now comes Michael J. McCloud, Jr., a practicing attorney of the Bar of the State of Texas, not as attorney for any party to the cause but as a friend and an officer of the Court, and respectfully requests leave to appear before the Court as amicus curiae for the purpose of calling to its attention the fact that the Court is without jurisdiction to hear and determine the matters set forth in plaintiff's original petition on file in this cause for the reason that the named defendant above does not do business in the State of Texas, and proper service upon said above named defendant has not been obtained, and to await and serve the court's convenience as it may elect to avail itself of the service of your petitioner."

The order granting this application reads:

"Be it remembered that on the 27th day of September, 1958, came on to be heard the application of Michael J. McCloud, Jr., a practicing attorney of the Bar of the State of Texas, to appear before this Court to advise in the capacity of amicus curiae, the Court having considered the same and having fully satisfied itself that the said Michael J. McCloud, Jr., can serve in

said capacity, and that the Court is of the opinion and so finds that the assistance of such friend and officer of the Court would be helpful to the Court and particularly appropriate in view of the nature of said cause. It is, therefore

"Ordered, Adjudged and Decreed by the Court that the leave requested by the said Michael J. McCloud, Jr., to appear before this Court in the capacity of amicus curiae for the purposes requested and for such other and further purposes as the Court may see fit to grant or extend, should be and the same is hereby granted in all things."

The order of dismissal reads:

"On this the 4th day of June, 1959, came on to be heard the amicus curiae's suggestion of want of jurisdiction in the above entitled and numbered cause wherein T. E. Nicklas is plaintiff and Ajax Electric Company, Inc. is defendant, and came the plaintiff by and through his attorney of record and came the amicus curiae in person and both announced ready to the Court. The Court, after reading the pleadings, hearing the evidence and argument of counsel, is of the opinion that the suggestion of the amicus curiae should be sustained and that this Court has no jurisdiction over the said defendant, Ajax Electric Company, Inc., a Pennsylvania corporation, and it is therefore

"Ordered, Adjudged and Decreed by the Court that the suggestion of the amicus curiae that this Court has no jurisdiction over the defendant, Ajax Electric Company, Inc., be and the same is sustained and that the Court does hereby dismiss said cause without prejudice all at plaintiff's costs for which let execution issue."

In Roper, supra, the question presented was whether or not a foreign corporation was doing business in Texas so as to au-

thorize service under Art. 2031 and 2031a, Vernon's Ann.Civ.St. It was contended that such corporation was transacting business in Texas through specified agents. If these persons were not agents of the corporation, as the court found, then obviously it did not do business in Texas through them and service under Art. 2031 was not authorized. We quote from that opinion:

"The defendant did not appear and the trial court, by a signed order, authorized an attorney to appear and advise the court in the capacity of amicus curiae. The order recited that the court was of the opinion and found that the assistance of the amicus curiae would be helpful and appropriate in view of the nature of the case. The amicus curiae then suggested that the court did not have jurisdiction of the cause and that it should be dismissed. * * *

"Appellant says that the appearance of the amicus curiae constitutes a general appearance of defendant and urges us to so hold.

"Brantly Harris a member of the Houston Bar filed an application to appear 'not as an attorney for any party to this cause but as a friend and officer of the court.' The order of the court granting leave to said attorney to appear as amicus curiae recites:

" 'The court having considered the same and having advised itself that the said Brantly Harris can serve in such capacity, and the court is of the opinion and so finds that the assistance of such friend and officer of the court would be helpful to the court, and particularly appropriate in view of the nature of said cause, it is therefore ordered, * * *'

"In the final judgment rendered in this cause it is recited that:

" '* * * the Court proceeded to hear evidence upon said Amicus Curiae suggestions and did hear argu-

ment of counsel and did cause the proceedings to be reported, and after said hearing the Plaintiff, Albert Roper, moved that the Court find that the Defendant Compania de Perforaciones Y Servicio, S. A. had in the amicus curiae proceedings entered a general appearance in this cause, which Motion was overruled by the Court; * * *'

"It clearly appears that the trial court first found that Harris could serve as amicus curiae and that such service would be of assistance and helpful to the court and particularly appropriate. And in the final judgment, after hearing evidence and argument, the trial court overruled appellant's motion to adjudge the amicus curiae's appearance as a general appearance by defendant.

"We are aware of course, upon facts different from the fact here, holding, properly we think, that an amicus curiae appearance may constitute a general appearance. However the facts recited by the trial court in his order granting leave to Harris to appear as amicus curiae and especially the recitals that he could so serve and that his assistance would be helpful and appropriate together with the findings made in the final judgment show that the trial court made at least two investigations of the matter and concluded that the appearance was proper and appropriate.

"We are unwilling to say that the busy trial court, who has shown himself to be cautious, was not entitled to assistance that he has found would be helpful to him and appropriate in the case."

It seems to me that the Court could have, and should have, used substantially the same language in this case as it did in Roper, unless the fact that Ajax was acquainted with Mr. McCloud and instructed Southwest, the alleged agent, to cooperate with him requires a contrary decision.

The only authority cited by the majority to sustain its holding is Burger v. Burger, 156 Tex. 584, 298 S.W.2d 119. That case is not factually in point because there the amicus curiae was not shown to have been authorized or requested by the Court to assist it and because he did not restrict his suggestion to a lack of jurisdiction over the person of the defendant, but he invoked the judicial functions of the Court to determine jurisdiction of the subject matter of the suit. It also appeared that the attorney making the suggestion was the paid attorney of the defendant.

I have examined all of the cases cited by the Supreme Court in support of the statement quoted from that opinion by the majority herein. In none of these cases does it appear that application was made to and granted by the Court, for anyone to appear as amicus curiae. In none of those cases did the Court, as here, find that the assistance of amicus curiae would be helpful.

I will not discuss those cases in detail but in most, if not all of them, the attorney styling himself as an amicus curiae did much more than merely suggest lack of jurisdiction over the person of a party.

It has been held that the appearance of a party's regular attorney as amicus curiae to object to the sufficiency of service of citation is not an appearance of the party. Elliott v. Standard Steel Wheel and Tire Armor Co., 173 S.W. 616, Texarkana Court of Civil Appeals. See also Anderson v. Service Life Ins. Co., 221 S.W.2d 398, by the same court.

The following quotation is taken from Chicago, R. I. & P. Ry. Co. v. Anderson and Co., 105 Tex. 1, 141 S.W. 513, 514:

"There is no suggestion in the record that the question of lack of service was obtruded upon the attention of the court, either for any sinister or improper purpose, or with any intent, or

that the same had the effect, to delay the proceedings. The fact that this suggestion was made by Mr. Harrison, who thereafter filed an answer for the railway company should not and does not, of itself, imply any such purpose. It must and should be assumed in favor of counsel, and also of the court below, and that their conduct in such matter was within the limits of professional propriety. * * * When a suggestion is made by one acting as amicus curiae, if same is covinous or corruptly done, or in such a manner as to deliberately trifle with the court, authority rests in the court to meet such an issue as it should be met, with all the power and authority the court possesses; but in the absence of such conditions, even if it be conceded that the persons making the suggestion were in error as to the facts or had misconceived the law, it certainly should not be the policy of the law to deprive his client of any hearing, and thus summarily dispose of his rights by a default judgment against him."

The Trial Court found no impropriety in the actions of Mr. McCloud. In fact, what he did was done with the Court's full acquiescence, consent and approval.

I find no impropriety in anything Mr. McCloud did.

The usefulness of amicus curiae after the parties have appeared in person and by counsel and after issue has been joined is much less than in cases of this character. There the Court has the assistance of able counsel. Here, the Court is likely to unknowingly render an invalid judgment, which no Court desires to do, unless someone, usually and quite naturally a friend, acquaintance of or attorney for the defendant, undertakes to inform the Court, the impending error will become a reality. I do not believe that, per se, such relationship between a person and the party disqualifies him as an amicus curiae. A friend of a party can also be a friend of the Court.

The other questions presented are whether or not Ajax was doing business in Texas and if so was Southwestern Engineering and Equipment Company, a Texas corporation of which Mr. Fred Harmon is president, its local agent for service under Art. 2031, V.A.C.S.

Servce of citation was had upon Mr. Harmon. I do not find the citation nor return of service in the record.

Ajax is a Pennsylvania corporation engaged in the sale of large industrial furnaces. Southwestern sells Ajax equipment and is paid for sales on a commission basis. Southwestern advertises Ajax equipment.

Mr. Tom Owen Means, sales engineer and assistant to the President of Southwestern testified that they take care of servicing Ajax equipment after selling it "although we haven't serviced any since we started to work for them."

Mr. Means also testified that Southwestern adjusted complaints and was on the mailing list of Ajax and received sales information as well as technical information from it.

Since some of the equipment is custom built by Ajax and ordinarily needs installing, Mr. Means stated that Southwestern cooperated with Ajax representatives in the installation and participated and aided in it.

The evidence shows that when Southwestern received the citation served on it as the agent of Ajax, it immediately forwarded the citation to Ajax, and that Mr. Fred Harmon, President of Southwestern, telephoned Ajax on this occasion.

I believe that the decisions in Gray Co. v. Ward, 145 S.W.2d 650, Waco Court of Civil Appeals, writ dism., cor. judgm., and Acme Engineers, Inc. v. Foster Engineering Co., 254 F.2d 259, 263, Fifth Circuit,

U. S. Court of Appeals, are excellent and adequate authority for holding that Ajax does business in Texas through its local agent Southwestern.[1]

I will not extend the length of this personal opinion by comparing the facts in those cases with those found here. I will state that they are strikingly analogous. The sound reasoning employed in those is applicable here, and while both opinions should be read in their entirety, I content myself by quoting the concluding paragraph in Acme:

"The important consideration is whether the 'travelling salesman' occupies such a responsible representative status as to make it reasonably certain that he will turn over the process to his company. That he actually has done so may be considered as in the Gray case, supra. Here, the evidence clearly established that Gulf States sought to please Foster and to look after Foster's best interests. Process served on Gulf States would almost inevitably reach Foster, and was actually so passed on. We conclude that process on Foster might be served on Gulf States."

The relationship between Southwestern and Ajax made it reasonably certain that process served on Southwestern as agent for Ajax would be, as it actually was, forwarded to Ajax.

I concur in the judgment of the majority reversing and remanding this cause for trial.

GRAY, Justice (on the point of dissent).

I agree with Associate Justice HUGHES that service on Southwest constituted service on Ajax. Our decision might well be rested on this point. However our views differ on the question of the appearance by amicus curiae.

It is my opinion that the appearance of Mr. McCloud was not "within the limits of professional propriety" and that it was not the appearance of a "bystander" acting "only for the personal benefit of the court."

By asking leave to appear as amicus curiae Mr. McCloud was not dealing at arm's length with the court but he assumed the role of a true amicus curiae,—"without interest in the litigation" and with a mission to aid the court.

I remain convinced that the appearance by Mr. McCloud was an appearance by Ajax.

[1] See Sec. 4, Art. 2031b, V.A.C.S. (1959) providing that a foreign corporation " * * * shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this state. * * * " This statute is consistent with the opinions in Gray and Acme, supra modifying the meaning of "doing business."