PIERCE, Judge.
This is an appeal by Evershield Products, Inc., from an order sustaining service of process theretofore obtained upon it and confirming the verdict and judgment rendered pursuant to such service.
Evershield Products, Inc., hereinafter referred to as Evershield Products, is a Maryland corporation and is the manufacturer of a resin commodity used in construction or remodeling of certain types of freezer units. Evershield Liquid Tile of Florida, Inc., hereinafter referred to as Evershield Liquid Tile, is a Florida corporation and sells, dispenses and services said resin substance, and is generally known as the “applicator.”
In May, 1962, plaintiffs J. A. and D. C. Sapp were doing business as Tice Super Market in Fort Myers and contracted with one Rutledge for remodeling and enlargement of their business structure, in the process of which Evershield Liquid Tile was a sub-contractor in the application of liquid tile, manufactured by Evershield products, in constructing a refrigerated icebox in the remodeling of the grocery store building. After completion of the icebox, extremely pungent, obnoxious and deleterious odors emanated from where the meats and produce were kept and permeated the entire building, causing considerable loss to the merchandise and produce stored in the building and necessitating the re-building of certain portions of the structure.
Plaintiffs Sapp brought suit in the Lee County Circuit Court against the two corporations, one as the manufacturer and the other as the servicing medium, of the allegedly defective material, averring substantially the foregoing facts. Separate summonses for each corporation were sent to Fort Lauderdale, where they were each served by the Sheriff of Broward County upon one “George Skadding, President of said corporation.” In other words, Skad-ding was served separately “as President” of the Maryland corporation and also the Florida corporation.
Evershield Products made no appearance in the Circuit Court suit and default was entered against it. Thereafter a jury, after an ex parte trial, returned a verdict against both corporations for $12,500.00, upon which verdict judgment was entered on December 4, 1964.
Thereafter on January 13, 1965, Ever-shield Products filed petition in the Circuit Court proceeding, alleging that Skadding was not on August 12, 1963, the date he was served in Broward County, either the President of Evershield Products or had any relationship with the company; that the president of the company is and was one Paul J. Petrlik; that the corporation was never served with process through the Secretary of State’s office, that it did not do business and had no place of business and no resident agent in the State of Florida; that it bore “no corporate relationship” with Ever-shield Liquid Tile, but they were two “distinct corporations”; that Evershield Products had never received copy of the complaint in the case nor ever had any process *12 “delivered into its hands”; and that therefore it was “not a party to these proceedings in fact and in law.” The petition prayed that the verdict and judgment aforesaid “be amended to strike” Evershield Products as a party, and that “the records of the Court be expunged” to eliminate the corporation from being bound by the judgment “because of lack of notice.”
Plaintiffs in the suit filed a reply to the petition aforesaid, admitting that Evershield Products was “a manufacturer of formulated polyester resins” and that process was duly issued and served in the cause on August 12, 1963, but denying all other allegations in the petition. By way of “Affirmative Defenses” to the petition, plaintiffs set forth that not only was Evershield Products duly served with process but that said corporation “did in fact have notice that the complaint and summons had been issued,” that George Skadding had been served as the purported president of the company, that a copy of the complaint had been sent by letter on or about September 11, 1963 to “Paul Petrilc,” [1] the actual President; that Evershield Products “was at all times advised as to the status of the suit” and had “notice of trial on damages on November 20, 1964 * * * and did not take any steps to contest the jurisdiction of the court.”
On October 14, 1965, after full hearing and taking of adversary testimony, the Circuit Judge entered order denying the petition of Evershield Products and confirming the verdict and judgment against the corporation. In conjunction with said order the Judge made findings of fact from the evidence substantially as follows:
that Evershield Products was duly served with copy of Complaint and Summons “by service upon an agent of” the corporation transacting business for it in the State of Florida”;
that the officers of Evershield Products “received a copy of the Complaint and Summons by registered mail”;
that the corporation “had forenotice of said suit and an opportunity to defend”;
that the corporation “chose not to raise the jurisdictional question until after the case had been tried before a jury and a verdict rendered and judgment entered”;
that Evershield Products “did business in the State of Florida through a broker, jobber or distributor,” namely, Ever-shield Liquid Tile;
that “strong economic ties existed between” Evershield Products and Ever-shield Liquid Tile; and
generally “that service was obtained pursuant to the laws of the State of Florida and that said [Evershield Products] was given notice and opportunity to defend the said suit.”
Evershield Products has appealed to this Court from said order aforesaid and assigns as error the findings and conclusions of the Circuit Judge. We affirm.
The crux of the appeal is whether, under the laws of Florida, Evershield Products received notice of the Circuit Court suit in such manner as would accord with the requirements of procedural due process, and whether the requirements of the Florida statutes were substantially complied with.
From the foregoing specific findings made by the trial Judge two major factual postulates may be deduced: (1) Evershield Products was doing business in Florida through a broker, jobber or distributor, namely, Evershield Liquid Tile, and that there were strong economic ties existing between the two corporations; and (2) Ever-shield Products, through its Maryland officers, had actual personal notice of pendency of the Florida suit by having received copy of the complaint and summons by registered *13 mail in ample time to defend, and also having been served with actual process in personam through an agent transacting business for it in Florida.
Since 1951 Florida has had upon its statute books what are known as the Long Arm statutes, which, as the term implies, reach out to render amenable to the Florida state courts foreign corporations doing business within the State of Florida, and which are so intended. These Long Arm statutes, or more precisely the “Florida Long Arm Jurisdiction Statutes” have been enacted, and subsequently enlarged and amended, since 1951. Two of these statutes are pertinent to this case, and appear as Secs. 47.-16(1) and (2), and 47.17. These sections are carried herewith in the margin.[2]
An interesting and instructive discussion of the antecedent history of the “Long Arm” statutes is found in the Mooney Aircraft case, infra (text 332 F.2d 137, et seq.) — interesting in that it vividly depicts the “ins and outs” of the Florida law, both statutory and case law; and instructive in that it shows the clear intent of the Florida legislature in enacting the “Long Arm” statutes. It seems that the Federal Court of Appeals, 2nd Circuit, in Berkman v. Ann Lewis Shops, Inc., 246 F.2d 44, affirmed a Federal District Court, 142 F.Supp. 417, which held the original 1951 Long Arm statute “inadequate to sustain an earlier Florida State Court judgment” but in so holding observed that “[t]his is not to say that a statute might not constitutionally be drawn which would make the presence in a state of a wholly-owned subsidiary of a foreign corporation sufficient basis to assert jurisdiction over the parent company,” 142 F.Supp., text 422. Florida instantly reacted in a “legislative reflex” to the Berk-man decision “by adding Subsection (2) to § 47.16 * * * so as to encompass distributors, jobbers, wholesalers, and brokers for foreign corporations.” And, to use the colorful language in Mooney Aircraft *14 (text 332 F.2d at page 138), Florida’s Long Arm “muscles were beefed up by the legislative declaration of policy stated in emphatic terms” in the 1957 amendment (now appearing as F.S. Sec 47.16 (2), F.S.A.), as follows:
“WHEREAS, persons, firms and corporations in other jurisdictions are directly or indirectly furnishing millions of dollars worth of tangible and intangible personal property to persons, firms and corporations in this state each year; and
“WHEREAS, litigation in both tort and contract frequently arises out of the purchase, lease, consignment, use and consumption of such property each year; and
“WHEREAS, the cost and expense of going to other jurisdictions, both national and international, frequently has the practical effect of denying all rights and remedies regarding such purchase, lease, consignment, use and consumption; and
“WHEREAS, it is just and fair that such litigation be conducted in this state rather than in a foreign jurisdiction.”
F.S. Sec. 47.16(1), F.S.A. provides that any foreign legal entity, natural or corporate, who “accepts * * * the privilege” of engaging “in business or a business venture” in Florida or has an office in the State shall be deemed to have appointed the Secretary of State of Florida as his agent for acceptance of process in the State courts in any suit “arising out of any transaction or operation connected with or incidental to such business or business venture”; provided that if the Florida entity has a resident agent in Florida process shall be served upon such resident agent; and, provided further, that process shall be served as provided upon non-residents in Section 47.30 (Emphasis supplied). Sub-section (2) of Section 47.16 provides that any person or corporation who sells or consigns personal property to any legal entity in Florida “through brokers, jobbers, wholesalers or distributors” shall be conclusively presumed to be carrying on a business or business venture in this State.
Sec. 47.17 provides that if a foreign corporation has no officers, directors or agents in Florida, “service may be made upon any agent transacting business for it in this state” (Emphasis supplied).
Sec. 47.30 provides for service of process upon the Secretary of State.
The trial Judge’s findings that Evershield Products was doing business in Florida through Evershield Liquid Tile as “broker, jobber or distributor” of its resinous materials and that “strong economic ties” existed between the two companies were amply supported by competent, substantial evidence adduced at the hearing, and must be accepted by this court for purpose of decision here. Substantial monetary credit was extended by Ever-shield Products to the Florida corporation. Evershield Products supplied it with sales assistance and advertising materials and sold and distributed its products to Ever-shield Liquid Tile to be used and serviced in Florida. At the time process was personally served on George Skadding, he was on the records of the Secretary of State as President of Evershield Liquid Tile. Ever-shield Liquid Tile originally came into being when Skadding and Paul J. Petrlik, President of Evershield Products, “decided to form the corporation and go into business in the State of Florida” as the “official applicators” of Evershield Products’ materials. Also, Petrlik was president of Florida Liquid Tile when it was first organized. Such facts, shown by largely uncontradicted testimony, sustained the findings referred to.
Likewise, the trial Judge’s findings that Evershield Products “had forenotice of said suit and an opportunity to defend” and that its officers had received a copy of the complaint and summons by registered mail, is supported by competent, substantial evidence. When Skadding was first served with the papers in Fort Lau- *15 ■derdale, he “called up” Harry H. Harris, then the operating manager of Evershield Liquid Tile, who immediately came over and “got the papers and said he would take care of it,” according to Skadding. Harris forthwith delivered the papers, comprising a copy of the summons and complaint, to Chester E. Tozzie, district adjuster of Travelers Insurance Company, the insurance liability carrier, who acknowledged receipt thereof by letter dated September 11, 1963, to Harris. Tozzie sent copy of that letter, together with copy of the summons and complaint, to Evershield Products in Maryland by registered mail, attention of “Paul Petrlik,” its President, “in order (as he stated in the letter) that they may properly defend themselves in this matter.”
The copy of letter and Court papers were received by Evershield Products and receipted for on September 16, 1963, by one Betty Jane Bragg, who was later identified by president Petrlik as being affiliated with 'the Maryland office. Tozzie had previously procured an extension of time to September 23, 1963, “before a default judgment” would be taken against Evershield ■Products, to provide additional time to defend, which fact he mentioned in his letter. The default judgment was not taken against Evershield Products until September 24, 1963. Mr. Harris later admitted in his testimony that “they (Travelers Insurance Company) investigated it and sent me a letter and said they had no defense.” These facts sustained the findings that Evershield Products had notice and knowledge of the suit.
Delray Beach Aviation Corp. v. Mooney Aircraft, Inc., CCA S, 1964, 332 F.2d 135, was a case identical in principle with the case sub judice. There the commodity involved was airplanes, which were manufactured in Texas by Mooney Aircraft, a Kansas corporation, and distributed in Florida by and through Metropolitan Aircraft corporation, a Florida corporation. 'Suit was brought in the Florida state court ¡by a purchaser of one of the airplanes against Mooney Aircraft for damages resulting from “the total loss of the plane when it crashed in Florida allegedly due to faulty manufacture.” The plane had been bought by Delray through Metropolitan as the distributor.
Plaintiff Delray had obtained a default judgment against Mooney Aircraft in the Florida state court and had then sought enforcement of the judgment in a Federal district court in Texas. Enforcement was denied in the Federal District Court, and Delray appealed. The sole point involved was the amenability of Mooney Aircraft to the Florida state court, which had sought to acquire jurisdiction over Mooney Aircraft through utilization of the same Long Arm statutes here involved. The Court of Appeals, Fifth Circuit, found the Florida statutes entirely consonant with due process and held the Florida state court judgment entitled to "full faith and credit.”
The only difference between Mooney Aircraft and the instant case is that in Mooney the foreign corporation did not deny actual notice of the proceedings against it, whereas here, Evershield Products does deny receiving actual notice. But it is “a distinction without a difference” for the reason that the trial Judge here found as a fact, in the light of sworn evidence, that Evershield Products did receive actual notice. Mooney holds inter alia as follows (text 332 F.2d 141):
“Holding, as we do, that by virtue of its operations through Metropolitan, its distributor, § 47.16 (1) (2), Mooney Aircraft was engaged in business activity within the State of Florida and therefore amenable to service of process, the question still remains whether the manner of service was proper. There is no question about actual notice. Mooney Aircraft was informed on at least four occasions, twice by the counsel for the State Court plaintiffs, and twice by Metropolitan, that the suit had been filed. Guided by its president-lawyer-witness, cf. Rachal v. Allen, 5 Cir., 1963, *16 321 F.2d 449, 451 (dissenting opinion), Mooney deliberately took the bold course of ignoring the Florida summons. Any lurking due process problems are therefore narrowly confined to the question of whether the Florida statutory structure reasonably assures that the nonresident will have fair notice and an opportunity for a fair defense. See Wuchter v. Pizzutti, 1928, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230; National Equipment Rental, Limited v. Szukhent, 1964, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354, 357.
H» *1»
“Although Metropolitan and Mooney Aircraft did not stand in the traditional relationship of principal and agent, their close economic business ties were sufficient to satisfy the Florida standard that there be a 'legal or moral duty on the part of the [agent] to report and properly handle a summons served on him as agent of’ the foreign corporation. Mason v. Mason Prod. Co., Fla., 1953, 67 So.2d 762, 763.
“This principle is followed by numerous courts. In Fiat Motor Co. v. Alabama Imported Cars, Inc., 1961, 110 U.S.App. D.C. 252, 292 F.2d 745, 747, the Court held that the District of Columbia Code provision for service ‘on the agent of such corporation or person conducting its business’ was broad enough to cover a distributor similar to Metropolitan since the distributor ‘occupies such a responsible representative status as to make it reasonably certain that he will turn over the process.’ That Court cited our earlier decision in Acme Eng’r, Inc. v. Foster Eng’r Co., 5 Cir., 1958, 254 F.2d 259. Of course this approach was recognized in International Shoe where the Court stated that it ‘is enough that [the foreign corporation] has established such contacts with the state that the particular form of substituted service adopted * * * gives reasonable assurance that the notice will be actual.’ 326 U.S. 310, at 320, 66 S.Ct. 154, at 160, 90 L.Ed. 95, 161 A.L.R. 1057. (Emphasis supplied).
‡ ^ ^
“As we said in Acme Eng’r, Inc. of a Texas ‘traveling salesman,’ Metropolitan here ‘occupies such a responsible representative status as to make it reasonably certain that [it] will turn over the process to his company.’ And there, as here, the fact that the representative ‘actually passed [the process] on’ may be considered in determining that reasonable probability. 254 F.2d 259, 263. It is this strong compulsion, whether described as a moral or a legal duty, to transmit the process on to the nonresident which supplies what was held to be the missing compunction in Wuchter v. Pizzutti, 1928, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446.”
In the instant case, service was not made upon the Secretary of State, as provided in F.S. Sec. 47.30, F.S.A. But neither was it in Mooney Aircraft. The opinion in Mooney held that service upon “any agent” under F.S. Section 47.17, F.S.A. meant, to all intents and purposes, “any resident agent” such as its distributor Metropolitan, and that it was not obligatory for a plaintiff to pursue Sec. 47.30. On this point Mooney holds as follows:
“The process was not served on the Florida Secretary of State. Rather, the service was made on Metropolitan (through its vice-president) as the ‘resident agent, in the absence of the president, vice president, cashier, treasurer, secretary, general manager and director’ of Mooney Aircraft. As we understand Mooney Aircraft’s contention, it is this. Although Metropolitan, the so-called resident agent, sent the process on so that Mooney Aircraft had direct, positive, written, official information as to the pendency of the suit and the purported service of process on it, Metropolitan was not a ‘resident agent’ and therefore as a matter of technical Florida statutory requirement, the serv *17 ice was imperfect. This necessarily assumes that had the service been had upon the Secretary of State, it would have been technically sufficient. The additional claim is then made that since the statute does not expressly compel the ‘resident agent’ to transmit the process to the foreign corporation, there is no assurance that it would be received, and hence the statute is constitutionally deficient.
“The last two sentences of § 47.16(1) prescribe that the service of the process ‘shall be in accordance with and in the same manner as now provided for * * * under the provision of § 47.30.’ The last adds a proviso ‘that if a foreign corporation has a resident agent in the state, service of process shall be had upon such resident agent as now provided by statute.’ This brings into play §§ 47.30 and 47.17.
“Guided, as we must be, by the Florida standard concerning the attributes of one having the status of an ‘agent’ for service of process, we think that Metropolitan was ‘a resident agent’ and that service of process ‘upon such resident agent’ was permissible. The District Judge seemed to think that Metropolitan could not be acting for Mooney Aircraft since each was engaged in its own separate business within the State of Florida. If that means that factually Mooney Aircraft was carrying on business within this assigned territory in its own right independent of Metropolitan, there is no basis in fact for such a finding. F.R. Civ. P. 52(a). If it means to imply that one cannot be a resident agent if his own interests are being advanced while serving the so-called principal, we think it is erroneous in law. Indeed, any such reasoning would be a repudiation of § 47.16 (1) and especially subsection (2). Under subsection (1), the acceptance by a nonresident ‘of the privilege * * * to operate, conduct, engage in, or carry on a business or business venture in the state’ is deemed to be an appointment of the secretary of state as the resident agent. Under subsection (2), anyone who ‘sells, consigns, or leases, by any means whatsoever’ personal property ‘through brokers, jobbers, wholesalers, or distributors’ shall be ‘conclusively presumed to be operating, conducting, engaging in or carrying on a business or business venture in this state’.”
Evershield Products had the full, unrestricted right, if it deemed service of process upon it in Florida to be defective in any way, to have the validity of such service tested out in the Circuit Court proceeding, and without in any way submitting itself to the jurisdiction of said Court on the merits if it should be determined that jurisdiction on the merits had not been acquired. This was succinctly pointed out in Mooney Aircraft in the following language (332 F.2d 144):
“And in assaying the federal constitutionality of the Florida Statute, we must certainly look at it in the light of Florida procedures which afford to a nonresident defendant a full and unconditional opportunity to contest jurisdiction over the person of the defendant to the bitter end. Rule 1.11(b), 1954, Florida Rules of Civil Procedure, 30 F.S.A., copied from F.R. Civ.P. 12, allows the defense of ‘ * * * (2) lack of jurisdiction over the person * * * (4) insufficiency of process, (5) insufficiency of service of process * * * to be made by motion. The rule was adopted with the purpose of abolishing former distinctions between general and special appearances, see Greenburg v. Greenburg, Fla.Dist.Ct.App., 1958, 101 So. 2d 608, and the Supreme Court in State of Florida ex rel. Eli Lilly and Co. v. Shields, Fla., 1955, 83 So.2d 271, has held that objection to the Court’s jurisdiction over the person of the defendant is not waived or prejudiced by participation in the trial and defense after the objections are overruled.
“That means that Mooney Aircraft, armed with full, correct copies of the *18 State Court pleadings and process, with detailed specific information from Metropolitan concerning the pendency of the case and the right under Florida practice to enter a special appearance, had a full, unrestricted opportunity to have the Florida Court pass upon its own statute and the sufficiency of the facts to support either amenability or the method of service, with right to review to the United States Supreme Court thereafter as to any federal constitutional questions. Of course the presence of this sensible and fair procedure does not compel a nonresident to submit either for the determination of that issue or the trial of the merits of the case. But in no sense does the risk of standing one’s ground on amenability to process carry with it a forfeiture of the right to present a defense. That Mooney Aircraft has lost that opportunity is the consequence of its own deliberative choice to take the bold course.” (Emphasis supplied).
Here, as in Mooney Aircraft, the nonresident voluntarily and knowingly elected to ignore the service of process upon it in Florida, and having made such election, it cannot now complain that, such service being now upheld, the judgment which it suffered not to resist is allowed to stand.
The decisions of the Florida appellate courts are consistent with the foregoing quoted holdings in Mooney. In Mason v. Mason Products Co., Fla.1953, 67 So.2d 762, appellant-plaintiff Mason sought to bind the foreign corporation, Mason Products Co., appellee-defendant, in the state court suit by service upon a person “as business agent” of defendant. The facts as to the relationship of the person so served with the defendant corporation are succinctly stated by Justice Drew in the opinion:
“The salesman upon whom process was served was regularly employed by a stranger to appellee. One day the salesman observed an advertisement of appel-lee and answered it. Appellee sent him a catalogue and a form letter and booklet telling him about appellee’s product and how to place orders. His compensation was the down payment set forth in the catalogue which, in the event of a sale, he retained. The order was then sent to ap-pellee in a foreign state, was subject to its acceptance, and if accepted the product was shipped to the customer C.O.D. The salesman knew nothing about the appellee, had no contract with it, and outside of members of his family had taken orders from only two persons, one of whom was appellant.”
In holding the service to be invalid as binding the foreign corporation under the foregoing facts, the opinion goes on to state as follows:
“The record shows no relationship of the character which would create either a legal or moral duty on the part of the salesman to report and properly handle a summons served on him as agent of the appellee. To hold that under such circumstances service on such person is sufficient to give the courts of this state jurisdiction to enter a judgment against the appellee offends every principle of justice and due process. After all, it is fundamental that due process requires notice and a fair opportunity to be heard, but this principle has been circumscribed by the admonition that such contracts must not offend traditional notions of fair play and substantial justice. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057. We think the situation here falls square in the latter category and that the service on the salesman was invalid.
jJ; % ifc >¡: ?¡; í|í
“Each case of this kind must rest on its own bottom for the simple reason that whether service is valid depends on what the facts are. There is no way to lay down a general principle applicable to all cases.”
In Zirin v. Charles Pfizer & Co., Inc., Fla., 128 So.2d 594, plaintiff Zirin had *19 sought to bind the non-resident corporate defendant Pfizer & Co. under F.S. Sec. 47.171, F.S.A.[3] rather than Sec. 47.17 (see marginal note 2, supra) because the effective date of the latter section had not accrued at the time of service, the opinion strongly implying, however, that if Sec. 47.17 had been applicable the service would have been clearly valid. But the opinion, again written by Justice Drew, held that even under Sec. 47.171 a foreign corporation was amenable to state court process upon its agent in the state even though the foreign corporation was “not qualified to do business in Florida,” the only condition being that the suit could “apply only to obligations or causes of action which arose out of the activities of the corporation in the State.” Relying heavily upon International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, the opinion goes on to lay down the yardstick as follows:
“In these days of jet airplanes and modern communications, it cannot be logically argued that the trial of such a cause away from home or principal place of business of the corporation imposes any undue hardship upon it. The courts of this State are always open to the use of such corporations to enforce obligations owed it by Florida citizens. There is no reason why, under the circumstances and subject to the limitations mentioned, the courts of this State should not be available to its own citizens to enforce the obligations of the foreign corporation.”
The opinion in Zirin summarized by saying that “if the record in the instant case established that the cause of action being sued upon was one which arose out of the activities of the defendant corporation in this State, we would approve” the service of process as made. In the case sub judice the cause of action of plaintiffs Sapp “arose out of the activities of the foreign corporation within this State”; in fact, it was bottomed upon the alleged noxious and deleterious character of the material manufactured by Evershield Products and for which Evershield Liquid Tile was its Florida “applicator.”
In H. Bell & Associates, Inc. v. Keasbey & Mattison Co., Fla.App. 1962, 140 So.2d 125, plaintiff Keasbey, a Pennsylvania corporation, sued Bell, an Illinois corporation, “for merchandise sold and delivered,” the transaction involved having taken place outside the state of Florida. The principal business of Bell in Florida was that of “a merchandise broker for municipal governments and other political subdivisions.” It maintained no substantial inventory, warehouse or manufacturing facilities. Service of process was upheld upon Bell, the foreign corporation, because the person served was the “head of the corporation,” and the service, therefore, came directly within the provisions of sub-section (1) of § 47.17 which permits service upon a foreign corporation “[tt] pon the president or vice-president, or other head of the corporation.” But the 3rd District Court in Bell took occasion to discuss subsection (5) of said § 47.17 which permits valid service to be made upon a foreign corporation “upon any agent trans,acting business for it in this state,” stating that "[t]he test used to determine if service upon an agent is sufficient to constitute service upon a corporation is whether or not, in fact, the corporation will receive notice of the action (citing cases).” In the *20 instant case there is no room for speculation as to whether such test was met, inasmuch as the trial Court found as a fact that Evershield Products did “receive notice of the action.” The rationale of the “test” set forth in Bell was applied in Confederation of Canada Life Insurance Company v. Vega Y Arminan, Fla.1962, 144 So.2d 805, which held inter alia that the corporation would be bound if it had “fair and ample notice of the suit against it,” citing Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485.
Deere & Company v. Watts, Fla.App. 1963, 148 So.2d 529, was a case quite similar in principle to the instant case. There Deere & Company was a Delaware corporation engaged in manufacturing and selling certain farm machinery and John Deere Company of St. Louis was a “jobber or distributor” for Deere & Company in Florida but did business with other franchised dealers in this state. In holding valid the substituted service made in Florida upon Deere & Company, the basic considerations underlying the Deere opinion are the same as hereinbefore mentioned in the instant opinion, principally the quoted language from Berkman v. Anne Lewis Shops, and the all-encompassing preamble to the 1957 amendment to F.S. Sec. 47.16, F.S.A. which was quoted in full there as here.
The late Supreme Court cases of Giannini Controls Corporation v. Eubanks, Fla. 1966, 190 So.2d 171, and Illinois Central Railroad Company v. Simari, Fla.1966, 191 So.2d 427, and the late 4th District Court case of Bradbery v. Frank L. Savage, Inc., Fla.App.1966, 190 So.2d 183, have not been overlooked and are distinguishable from the case sub judice.
The opinions in all three of these cases held that each case was governed by Zirin v. Charles Pfizer & Co. Inc., supra, namely, that it must appear that the foreign corporation was not only “doing business” in Florida but that the cause of action sued upon in Florida “arose out of the activities of the defendant foreign corporation in the State of Florida.” In Giannmi and Simari, the Court held that the facts did not meet such test and therefore the Florida courts did not acquire jurisdiction over the foreign corporations; while in Brad-bery the Court held that the facts did meet the test and that the Florida Court had binding jurisdiction over the nonresident corporation. It is unnecessary here to dwell upon the facts involved in each of the foregoing cases; to do so would unduly extend this opinion. Suffice to say that the facts of the instant case come well within the orbit of the several cases, supra, holding the foreign corporation to be amenable to the Florida Courts through substituted service of process pursuant to the quoted statutes.
The order appealed from must accordingly be, and is, affirmed.
Affirmed.
ALLEN, C. J., and LILES, J., concur.

. The name had previously been legally changed from “Petrlik” to “Petrik,” and is referred to interchangeably in the record here.

. 3T.S. § 47.16, F.S.A. Service of process upon nonresidents engaging in business in state.
(1)The acceptance by any person or persons, * * * who are residents of any other state or country, and all foreign corporations, * * * of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or carry on a business or business venture in the state, or to have an office or agency in the state, shall be deemed equivalent to an appointment by such persons and foreign corporations of the secretary of state of the state as the agent of such persons or foreign corporations upon whom may be served all lawful process in any action, suit or proceeding against them * * * arising out of any transaction or operation connected with or incidental to such business or business venture, and the acceptance of such privilege shall be signification of the agreement of such persons and foreign corporations that any such process against them * * * shall be of the same legal force and validity as if served personally on such persons or foreign corporations. Service of such process shall be in accordance with and in the same manner as now provided for service of process upon nonresidents under the provision of § 47.30. Provided that if a foreign corporation has a resident agent in the state, service of process shall be had upon such resident agent as now provided by statute.
(2)Any person, firm or corporation which through brokers, jobbers, wholesalers or distributors sells, consigns, or leases, by any means whatsoever, tangible or intangible personal property, to any person, firm or corporation in this state, shall be conclusively presumed to be operating, conducting, engaging in or carrying on a business or business venture in this state.
§ 47.17 Service of process on private corporation. — Process against any corporation, domestic or foreign, may be served:
(1) [on president, vice president]
(2) [on cashier, treasurer; etc.]
(3) [on director of the company]
(4) Upon any officer or business agent, resident in the state.
(5) If a foreign corporation shall have none of the foregoing officers or agents in this state, service may be made upon any agent transacting business for it in this state.
(6) [section not applicable insurance companies]
(7) The provisions of this section shall be cumulative to all existing laws.

. 47.171 Service of process; domestic and foreign corporations
When any domestic or foreign corporation shall fail to comply with §§ 47.34 and 47.35 relating to the designation of the place for service of process, or in the alternative, with § 47.36, relating to the designation of the office of the clerk of the circuit court as a place for service of process, then process directed to any do-mestie corporation failing to comply with said sections may be served upon any officer or agent of such domestic corporation resident in the state or transacting business for it in the state. Process directed to any foreign corporation failing to comply with said sections may be served upon any agent of such foreign corporation transacting business for it in Florida.