**BLUFF CREEK OIL COMPANY and Wabash Oil Company, Appellants,**

v.

**Harold J. GREEN, Appellee.**

**No. 17056.**

United States Court of Appeals Fifth Circuit. June 26, 1958.

Leon Shipp, Oklahoma City, Okl., J. W. Hassell, Jr., Dallas, Tex., Robinson, Shipp, Robertson & Barnes, Oklahoma City, Okl., for appellants.

Charles O. Shields, Dallas, Tex., for appellee.

Before TUTTLE, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

In testing whether the summary judgment entered in behalf of an Illinois judgment creditor with an ancillary Illinois order of garnishment was correct, the real issue is the validity of the Illinois judgment entered after default by the nonresident defendants who were purportedly served with process in accordance with the Illinois statutory procedure.

The case comes to us via an interpleader filed by an oil purchasing company under 28 U.S.C.A. §§ 1335, 1397, and 1361 seeking to determine to whom Texas oil run payments, deposited by it as a stake-holder in the registry of the Federal Court, should be paid. Only that portion of the final interpleader judgment below as adjudged specified amounts to Green, the Illinois judgment creditor, rather than to Bluff Creek Oil Company and Wabash Oil Company, two of the three Illinois judgment defendant debtors, is before us. The sole attack is on the ground that the Illinois default judgment was void for want of jurisdiction over the person of the non-resident defendants. That in turn involves the validity of the Illinois statute as retroactively applied and the nature and sufficiency of the activities in Illinois of the nonresident defendants to give contact with Illinois.

Underlying this complex litigation which has percolated to us in a simplified form is the old, old story. Green, an Illinois lawyer, importuned in 1951, so he says, by R. H. (Bob) Rucker, an Oklahoma oil man, the president of Wabash, the general factotum and manager of Bluff Creek, father of its vice president, the initial lessee in several of the interests sold to Green, bought a fractional part of the working interest in five Texas leases which were owned by Bob Rucker or Wabash. At the time of the purchase, Rucker represented to Green that the wells were commercially productive at a specified rate, would make substantial profits and return his investment within two years. Green also claims that Rucker represented that while the properties were under an existing operating agreement between the mineral lessees and "his corporation," Bluff Creek, covering operation and development of the properties, there was then, and would thereafter be, no service charge made by Bluff Creek, and operating expenses were fixed at approximately one-fourth of the value of current production. As the frequent sequel, it did not turn out that way, resulting, so Green says, to his damage in the amount of $17,000 which he had paid for these working interests.

This was the burden of Green's suit filed in the Illinois State Court November 14, 1956, against R. H. Rucker, Wa-

bash and Bluff Creek. Acting pursuant to those provisions [1] of the Illinois Civil Practice Act enacted in 1953 and amended 1955, process was issued and was thereafter served personally on R. H. Rucker individually and on behalf of the two corporations, at the offices in Oklahoma City where the business of Rucker and these affiliated corporations was generally conducted.

■ As the question of the construction and validity of the Illinois statute is common to both defendants, we dispose of it before discussing the factual distinctions between the two. Actually the interpretation of the statute insofar as its retroactivity is concerned is not open to us. As this is just another diversity suit, Erie [Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] commits us to what authoritative Illinois decisions have said. Whether for good or bad, Illinois has ruled precisely that as a matter of statutory interpretation this Act has retroactive application. Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673.

■ Of course, that Illinois holding, decisive as it is on construction, still leaves for us the genuine Federal question whether either its retroactivity or applicability to nonresidents served outside the state violated the National Constitution. On neither point, in our judgment, is the Act imperiled. Indeed, both seem to be authoritatively answered by McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 223. On retroactivity and the analogous problem of impairment of contracts, the Court emphasized about the California statute there involved what the Illinois Court stressed concerning this one in Nelson that the service of process statute did not add to or create new liabilities which were then sought to be retrospectively asserted. What the process law does is merely provide for the effectual assertion of that right, a means of doing so through local courts. As a remedial, procedural statute, it could constitutionally apply to supply effective machinery for the assertion of existing substantive

---

1. Sections 17 and 16, Title 110, Smith-Hurd Illinois Annotated Statutes, as amended 1955, provided:

"§ 17. Act submitting to jurisdiction—Process.

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this State;

"(b) The Commission of a tortious act within this State; * * *

"(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State.

"(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

"(4) Nothing herein contained limits or affects the right to serve any process in any other manner now or hereafter provided by law."

"§ 16. Personal service outside State.

"(1) Personal service of summons may be made upon any party outside the State. If upon a citizen or resident of this State or upon a person who has submitted to the jurisdiction of the courts of this State, it shall have the force and effect of personal service of summons within this State; otherwise it shall have the force and effect of service by publication.

"(2) The service of summons shall be made in like manner as service within this State, by any person over 21 years of age not a party to the action. No order of court is required. An affidavit of the server shall be filed stating the time, manner and place of service. The court may consider the affidavit, or any other competent proofs in determining whether service has been properly made.

"(3) No default shall be entered until the expiration of at least 30 days after service. A default judgment rendered on such service may be set aside only on a showing which would be timely and sufficient to set aside a default judgment rendered on personal service within this State."

rights which, of course, on Green's Illinois State Court complaint came into being as a result of the transactions in 1951. Funkhouser v. J. B. Preston Co., 290 U.S. 163, 54 S.Ct. 134, 78 L.Ed. 243; National Surety Co. v. Architectural Decorating Co., 226 U.S. 276, 33 S.Ct. 17, 57 L.Ed. 221. Moreover Illinois, concerned as it is with a construction which claims the full reach open under the Federal Constitution, is aware of the vital distinction and has itself stricken down retroactive laws which create new substantive rights or impose new liabilities. Theodosis v. Keeshin Motor Express Company, Inc., 341 Ill.App. 8, 92 N.E.2d 794.

■ Similarly, the Court in McGee held that if the transaction was one which had a substantial connection with a state and effective means was provided in the statute for actual notice and ample opportunity to appear and defend,[2] it was not a violation of due process to afford local citizens a local forum for redress of local wrongs or rights. This was, the Court asserted, the lesson taught, for "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." McGee v. International Life Insurance Co., supra, 355 U.S. at page 222, 78 S.Ct. at page 201, 2 L.Ed.2d at page 226.

Of course this latter point requires that there be some connection with the State of Illinois to invest it with the power to make service of its process effective against outsiders. Sunday v.

Donovan, 16 Ill.App.2d 116, 147 N.E.2d 401; Haas v. Fancher Furniture Co., D.C.Ill., 156 F.Supp. 564; Orton v. Woods Oil & Gas Co., 7 Cir., 249 F.2d 198; Nelson v. Miller, supra. We find no difficulty on that score so far as the nature of these transactions is concerned and the participation in them by Wabash. Our reservation on Bluff Creek arises entirely because that was a factual dispute not resolvable by summary judgment.

■ By request for Admissions and a pretrial deposition of Rucker, it was uncontradicted that all of the negotiations with Green in 1951 had taken place in Chicago over a period of a considerable number of days. The agreement was there made, Rucker returned to Oklahoma where the papers were prepared after which they were returned to Chicago for final execution and delivery there. What was sold and conveyed by these transactions was a fractional part of the working interest which Rucker individually or Wabash owned in the properties. Obviously Rucker was authoritatively dealing for himself, and it is equally plain that he was, and was acting as, the president of Wabash and on its behalf in the Chicago transactions. He could bind it by the contracts there negotiated and made and could, at the same time, commit torts in Illinois by making the representations which the default decree, if valid, established. The moving papers reflected that there was no genuine, real, actual issue of fact on this, and summary judgment was therefore right as a means of disposing of .it without a costly, pro-

2. The nonresident corporate defendants had actual knowledge of the suit through personal service on its responsible management. The defendants had at least 30 days for answer prior to default, see Section 16(3), note 1, supra, and the Act likewise provided for a special appearance to contest jurisdiction:

"§ 20. Special Appearance.

"(1) Prior to filing any other pleading or motion, a special appearance may be made either in person or by attorney for the purpose of objecting to the jurisdiction of the court over the person of the defendant. A special appearance may be made as to an entire proceeding or as to any cause of action involved therein. Every appearance prior to judgment, not in compliance with the foregoing is a general appearance. * *

"(3) If the court sustains the objection, an appropriate order shall be entered. Error in ruling against the defendant on the objection is waived by the defendant's taking part in further proceedings in the case, unless the objection is on the ground that the defendant is not amenable to process issued by a court of this State."

longed trial. Cf. Millet v. Godchaux Sugars, Inc., 5 Cir., 241 F.2d 264; Carss v. Outboard Marine Corp., 5 Cir., 252 F.2d 690, 1958 A.M.C. 638.

But this was not the case with respect to Bluff Creek. Court and counsel seem to have become so preoccupied with the question of *agency* of Rucker to act for and on behalf of, or receive service [3] for, Bluff Creek, that the crucial point escaped all.

The serious question was not whether Rucker was agent for Bluff Creek. Indeed, this was no question at all for the Requests for Admission, showing factually that he was, had been, and still was the general manager of Bluff Creek in the active management and handling of its affairs, and not a single act of his in all of his manifold dealings had ever been questioned or repudiated by the corporation, made his belated formal denial of authority a pure afterthought and a pretended dispute which was ineffectual. Bruce Construction Corp. v. United States, 5 Cir., 242 F.2d 873.

What was the issue was whether, in fact, Rucker with his collapsible, expansible legal personality as he dealt now for himself, now for one, but not the other, of several corporations, did anything in Chicago on behalf of Bluff Creek. On the record so far, Bluff Creek did not it-self sell anything. It had nothing to sell. Its connection with these properties was solely that of the operator under a traditional operating agreement previously executed and thereafter binding on successors of all or a part of the working interest. In Green's State Court complaint and in his supporting affidavit for summary judgment, he inferentially alleges that misrepresentations were made by Rucker apparently on behalf of Bluff Creek, but no factual statements are made with such positiveness and directness that, standing alone, they would reflect that no issue existed. Moreover, Bluff Creek filed a controverting affidavit denying categorically that it had or carried on any dealings with Green in Illinois in the *transaction* which was the basis of the Illinois suit. The affidavit also set forth in detail the operating agreements between it and Rucker and it and Wabash. In accordance with the operating agreements, invoices were sent, of course, to owners of fractional parts of the working interest, but this, it claimed, was not a part of the *transaction* itself, and the mere transmission of them to Green in Chicago by mail thereafter did not give requisite connection with Illinois.

■■■■ In the face of this and the equivocal nature [4] of the answers to Re-

3. As Section 16, note 1, supra gives personal service on a nonresident subject to Section 17 the same force and effect as personal service within the state, service upon Rucker as general manager was sufficient under Section 13.3 of the Illinois Civil Practice Act:

"A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of said corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law."

4. The ones chiefly relied on by Green are Numbers 38 and 39:

"38. That Bob Rucker, also known as R. H. Rucker, has since 1951 personally appeared in Fort Worth, Texas at the offices of the plaintiff, Sinclair Crude Oil Company and in Chicago, Illinois at the offices of the defendant, Harold J. Green."

Answer: "This defendant admits the matter stated therein."

"39. That on such occasions he has purported to transact business on behalf of Bluff Creek Oil Company, defendant herein."

Answer: "This defendant admits that Bob Rucker has acted as the Business Manager of Bluff Creek Oil Company of Texas and as such has transacted business on behalf of said company."

Number 38 does not purport to say that while at the offices of Green in Chicago, Rucker was there on behalf of anyone, Bluff Creek or otherwise. That was to be covered by Number 39, but the answer carefully refrains from making any admission about "such occasions" or that he has ever "transacted business" on behalf of Bluff Creek with Green. If in the context of this case, these answers were a disingenuous, cunning deception and a failure fairly to meet the substance

quests for Admissions, a definite impression was left that a real controversy existed on whether Bluff Creek, through Rucker or any other agent, had had any such dealings in Illinois with Green. That, of course, was crucial to the valid application of Section 17 of the Illinois Civil Practice Act and where one affirms, and the other denies, and it is not a mere paper sham, the Court cannot short circuit a trial or the determination by Judge or Jury of the right of that issue in the traditional way. Bruce Construction Corp. v. United States, supra.

The judgment is affirmed as to Wabash but reversed and remanded for further and not inconsistent proceedings [5] as to Bluff Creek.

Affirmed in part and reversed and remanded in part.

of the requested Admission, F.R.C.P. 36 (a), 28 U.S.C.A., the sanction to be exerted is found in F.R.C.P. 37(c); Akins v. McKnight, D.C.Ohio, 13 F.R.D. 9, and not in the unauthorized granting of summary judgment.

5. Partial summary judgment, F.R.C.P. 56 (d), was proper as to Rucker's agency generally and as a proper person upon whom service of process could be had. Pending further hearing by the District Court after remand, the stay of the State Court proceedings in Illinois or Texas, or both, shall remain in effect to allow the Trial Court to preserve the status quo.