**LONE STAR MOTOR IMPORT, INC.,**
Appellant,

v.

**CITROEN CARS CORPORATION,**
Appellee.

**No. 18546.**

United States Court of Appeals
Fifth Circuit.

March 2, 1961.

Winston R. Ellis, Hirsch & Westheimer, Houston, Tex., for appellant Lone Star Motor Import, Inc.

W. N. Arnold, Jr., Olan Lowrey, Houston, Tex. (Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., of counsel), for appellee.

Before TUTTLE, Chief Judge, and JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This case presents the question of validity of service of process on a nonresident corporate defendant effected by service on the Secretary of State pursuant to a recent Texas statute declaring that the entering into of a contract with a resident of Texas for partial performance there constitutes the requisite doing of, or engaging in, business. The District Court held that if applied literally to the making of the single contract (the breach of which was the subject of this suit) it would be a denial of due process under the Fourteenth Amendment.[1] Service of process was therefore declared invalid and the suit ordered dismissed. The Court declined to permit the filing of a proposed amendment alleging a num-

---

1. Lone Star Motor Imports, Inc. v. Citroen Cars Corporation, D.C.S.D.Tex.1960, 185 F.Supp. 48.

ber of detailed activities showing an actual course of dealings by the non-resident corporate defendant within the State of Texas.

The suit was filed in the Texas State Court by Lone Star Motor Import, Inc., a resident of Texas. The defendant was Citroen Cars Corporation, a foreign corporation. Citroen removed the case to the Federal Court. The State Court petition reflected that Citroen was a foreign corporation which had not been admitted to do business in Texas, nor had it appointed an agent for process. It was alleged, however, that Citroen "does business in the State of Texas" and that "this suit arises out of business done by [Citroen] in this state." The petition did not undertake to describe the acts constituting such "doing business" except to allege that Lone Star and Citroen "entered into a written contract" for the exclusive distribution of Citroen cars in Texas. A copy of the contract was annexed to the petition as an exhibit. Breach of this contract by Citroen after substantial performance by Lone Star within the State of Texas was the subject of the suit for damages.

The "doing of business" was, on this showing, therefore confined to the making of the single contract. This brought into play Art. 2031b Tex.Civ.Stat. which expressly provides that without further showing "entering into contract by mail or otherwise" by a "foreign corporation" with "a resident of Texas" which is "to be performed in whole or in part by either party" in Texas "shall be deemed doing business in" Texas.[2]

 The precision of this statute and the pleaded claim eliminated one of the two inquiries ordinarily presented in this situation. "In determining the sufficiency and validity of service of process on a foreign corporation under laws of the forum state, the problem divides itself along lines of state and national interest. The first part is to ascertain whether the state law means to encompass the challenged service. This question—at least to diversity cases which this one is—is wholly a matter of state law, Lone Star Package Car Co. v. Baltimore & Ohio R. Co., 5 Cir., 1954, 212 F.2d 147, 153 * * *. The second is conditioned on an affirmative answer to the first, and then presents the problem whether the state law as thus applied offends the Federal Constitution." Stanga v. McCormick Shipping Corporation, 5 Cir., 1959, 268 F.2d 544, 548.

 Here there can be no controversy as to the first—the area claimed by the state law. Indeed, it seems highly likely that, as is true for similar legisla-

2. Article 2031b:
 "Act of engaging in business in state as equivalent to appointment of Secretary of State as agent
 "Sec. 3. Any foreign corporation * * * or non-resident natural person that engages in business in this State, irrespective of any Statute or law respecting designation or maintenance of resident agents, and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such foreign corporation * * * or non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceedings arising out of such business done in this State, wherein such corporation * * * or non-resident natural person is * * * a party.
 "Doing business in state; definition
 "Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation * * * or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this state." Tex. Civ.Stat. art. 2031b (Vernon Supp.1960). Article 2031b' was adopted May 12, 1959 (effective 90 days later). This was not long after the United States Supreme Court's decision of December 1957 in McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L. Ed.2d 223.

tion in many other states, see e. g., Stanga v. McCormick Shipping Corporation, supra, 268 F.2d at page 550; Bluff Creek Oil Co. v. Green, 5 Cir., 1958, 257 F.2d 83, the Texas purpose was to exploit to the maximum the fullest permissible reach under federal constitutional restraints.[3] It was also, as it has been for other states, a means of avoiding the troublesome difficulties of tying amendability of service of process to taxability of a foreign corporation, or denying it access to the courts and related problems of the regulation of the right to do business.

But this left sharply posed the second problem—compliance with federal constitutional requirements. On this the District Court held the statute constitutionally invalid. As the parties in briefs and the District Court in its opinion developed the question is seemed to center around McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, and what that decision had done to the notions epitomized in Pennoyer v. Neff, 1877, 95 U.S. 714, 24 L. Ed. 565. And the consideration of this led inescapably to the further one as to what Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, did to McGee. This has likewise been the center of the arguments before us. But because of other factors we do not reach these intriguing questions.

In the course of the opinion the District Judge pointed out that the position taken by the plaintiff, Lone Star, was unique. Perhaps more than that, for he almost implied that the position was one of calculated boldness. At least it seems bold because Lone Star rested jurisdiction solely on the basis of the making of the single contract and did not undertake to allege that either under such contract or otherwise Citroen, the defendant, was actually engaged in manifold activities in Texas.[4] The Trial Court's opinion holding the statute invalid was announced June 2, 1960. Almost immediately (on June 8) Lone Star filed a motion for leave to amend its complaint by adding proposed specific allegations covering the phases omitted and commented upon by the Court, note 4, supra. Up to that time no order or judgment had been submitted for entry[5] or entered by the Court. On June 17,

3. The Texas Legislature has apparently undertaken to answer the question which this Court in Lone Star Package Car Co. v. Baltimore & O. R. Co., 5 Cir., 1954, 212 F.2d 147, 153 note 3, had hoped would be answered by the Texas courts but had noted in Acme Engineers, Inc. v. Foster Engineering Co., 5 Cir., 1958, 254 F.2d 259, 262, was not likely due to the absence in Texas of a special appearance procedure. On the present outlook the *amicus curiae* route is unavailable to test validity of service of process. Nicklas v. Ajax Electric Co., Tex.Civ.App. 1960, 337 S.W.2d 163.

4. "Plaintiff could have alleged other acts of defendant that would constitute doing business within the state. The court wonders how many automobiles were shipped by defendant under the contract, how many were delivered in Texas, and whether defendant's agents ever entered Texas to negotiate the contract, render technical assistance, or instruct plaintiff's mechanics in the mechanism of the automobiles. How closely did defendant supervise the alleged establishment of a dealership organization? Clearly such an important contract created a continuing relationship between plaintiff and defendant involving many such acts of doing business, yet none of them are alleged, much less substantiated by affidavits or discovery. Instead, all the Court is presented with is a contract entered into with plaintiff, a resident of Texas, to be performed in whole or in part within the state. No act of doing business by defendant is alleged beyond the entry into this contract. * * *." 185 F.Supp. at page 52.

5. The opinion concluded: "Defendant's motion to quash summons and complaint will be granted. The clerk will notify counsel to draft and submit judgment accordingly." The trial court's direction contemplated the doing of some further act. This was not, therefore, the equivalent of an entry of judgment under F.R.Civ.P. 58, 28 U.S.C.A. United States v. F. & M. Schaefer Brewing Co., 1958, 356 U.S. 227, 78 S.Ct. 674, 2 L.Ed. 2d 721; Erstling v. Southern Bell Telephone & Telegraph Co., 5 Cir., 1958, 255 F.2d 93. See also Carter v. Campbell, 5 Cir., 1960, 285 F.2d 68.

Citroen made a perfunctory reply in opposition [6] and proffered a formal order as directed [7] which the Court entered six days later on June 23.[8]

■ If analysis demonstrates that (1) on the facts alleged in the proposed amendment jurisdiction would exist over the person of the defendant, and that (2) the Court should have afforded the plaintiff an opportunity to establish them, it is perfectly obvious that a decision is not actually required as to the initial question of the constitutional validity of a statutory "doing business" based solely on the making of a single contract. Whatever may be the temptations—or the inability to resist them—in adjudicating ordinary matters either of fact or statutory construction courts are especially cautioned against the determination of constitutional questions not inescapably presented where some other basis less profound is actually available as a ground of disposition. Clay v. Sun Insurance Office, Ltd., 1960, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170; Barr v. Matteo, 1957, 355 U.S. 171, 78 S.Ct. 204, 2 L.Ed.2d 179; Harmon v. Brucker, 1958, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503.

■ As to (1) it is beyond argument that the factual allegations of the proposed amendment showed ample actual activity of the corporate defendant within Texas. A brief synopsis will suffice. In April 1958 Citroen's executive vice president together with its manager came to Texas to negotiate a contract. The parties reached an understanding which was substantially incorporated thereafter in the written contract. At that time Lone Star gave, and Citroen accepted, in Texas an order for the first shipment of cars to be delivered in Texas. Thereafter Citroen shipped over 200 cars into Texas. During the contract period Citroen maintained a warehouse in Houston where it stored cars as contemplated in a written supplement to the main contract.[9] Lone Star, as required by the contract, maintained "in a conspicuous place" at its showrooms in Texas "signs bearing the Citroen trademark." During the pendency of the contract Citroen sent three service representatives into Texas where they instructed dealers (appointed previously by Lone Star pursuant to the contract) in the proper servicing and repair of these foreign cars. Similarly, Citroen's manager and other top officials came to Texas to stimulate sales by Lone Star through its dealers.

These acts, if established, reflect far more than the mere making of a single contract or the solicitation of orders. They are more than adequate to show the minimal contracts with Texas to satisfy the "traditional notions of fair play and substantial justice," International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95. Much less was deemed sufficient by us in Acme Engineers, Inc. v. Foster Engineering Co., 5 Cir., 1958, 254 F.2d 259.

■ That brings us then to question (2) whether the Trial Court ought to have allowed the amendment in order to afford Lone Star the opportunity of

6. "* * * Citroen * * * files * * * its opposition * * * and as grounds would show:
"* * * *
"II.
"That the motion of the plaintiff for leave to amend was not filed until June 8, 1960, such filing date being subsequent to the Court's decision in said cause, and, therefore, comes late."

7. See note 5, supra. A proposed order was attached to Citroen's opposition. "Pursuant to the instruction contained in the Court's opinion * * * June 2, 1960."

8. The order read: "Accordingly, it is Ordered, Adjudged and Decreed by the Court that the motion of the defendant, Citroen Cars Corporation, to quash the summons and complaint be and the same is hereby in all things sustained, and said cause be and the same is hereby dismissed."

9. For each car ordered by Lone Star, Citroen agreed to store an identical vehicle in Texas.

establishing the truth of the allegations which—we have held above—would have been sufficient. We phrase it this way rather than in the terms of the ultimate test—i. e., abuse of discretion—because we think this approach demonstrates that no reason existed or was offered why leave to file the amendment should be denied. The absence of *any* substantial reason satisfies the test.

First, F.R.Civ.P. 15(a) declares an affirmative policy in emphatic terms. Requiring that after the first amendment subsequent amendments may be made only by leave of court or by written consent of the adverse party, it states that "leave shall be freely given when justice so requires." Of course, that is not a mechanical absolute and the circumstances and terms upon which such leave is to be "freely given" is committed to the informed, careful judgment and discretion of the Trial Judge as he superintends the development of a cause toward its ultimate disposition. That contemplates, however, that there be some reason or some factor making it reasonably necessary that conditions or restrictions be attached.

Here none were found or even mentioned by the District Court. The Judge simply entered the proffered order. The defendant Citroen's opposition was the perfunctory one that the motion "comes late," see note 6, supra. If not inadvertent, it is singular that the protest is merely that the motion "comes late" and not "*too* late." In its natural enthusiastic support of this exculpatory dismissal, it adds little more here. Citroen suggests that until the order of dismissal was set aside, there was nothing to amend so a motion for leave to file an amendment was an empty thing. Perhaps Szalkiewicz v. Farrell Lines, Inc., D.C.S.D.N.Y.1956, 142 F.Supp. 496, 498, so held. But this puts a premium on form. We have no doubt that the Judge below, as did Citroen, understood that by the proposed amendment Lone Star expected to be able to show jurisdiction and if so, the former order would fall upon the factual showing being made. Next, Citroen asserts in its brief that, since Lone Star did not initially allege the facts and relied on the Texas statute, this "forced * * * appellee to do extensive research to prepare a trial brief on the question of constitutionality of the Texas statute * * *." Worse than that "* * * the court's time and energies had to be expended in preparing an opinion and doing independent research * * *." This leads it, without further demonstration of just how it is damaged, to conclude that this "course of conduct has been prejudicial to both the appellee and the court * * *."

We can see no such prejudice. On the other hand, we see much prejudice, perhaps irreparable, if leave is not granted.

This was certainly not an instance in which anyone can be charged with dilatory neglect. On the contrary, the cause proceeded with remarkable dispatch.[10] This continued to be true down through the filing of Lone Star's motion for leave to file the amendment. It was filed within 6 days of the Court's opinion and well within the period of 10 days allowed as of right under F.R.Civ.P. 59(a) and (b) for rehearing. Actually, of course, it was filed before any judgment whatsoever was rendered or "entered" under F.R.Civ.P. 58, see notes 5 and 7, supra.

---

10. This is the time table:

| November 21, 1959 | Suit filed State Court |
|---|---|
| December 15, 1959 | Suit removed to Federal Court |
| December 17, 1959 | Citroen's motion to quash |
| April 15, 1960 | Notice to bring on motion to quash |
| May 2, 1960 | Motion reached on motion calendar under local rule |
| June 2, 1960 | Court's memorandum opinion |
| June 8, 1960 | Lone Star's motion leave to file amendment |
| June 17, 1960 | Citroen's reply in opposition |
| June 23, 1960 | Final judgment of dismissal |

Nor is it a case in which counsel out of carelessness or indifference or professional incompetence leaves out some essential allegations. Here a Texas plaintiff through a Texas lawyer filed a suit in a Texas Court. The Texas lawyer was faced with a Texas statute which was obviously advantageous to him and like suitors. Until such time as the statute was declared invalid, he had a perfect legal right to resort to its benefits. Certainly he had a right to test it in a bona fide case and controversy. He did not have to assume that it would be held invalid. He had some reason to think—or at least to hope—that it might be sustained.[11] It was not an unreasonable action, then, for the lawyer to stand initially upon the Texas statute. Certainly it was not so much so as to penalize the litigant by forbidding the showing which the District Court itself thought must have been available, see note 4, supra.

 On the other hand, there is lurking here a likelihood of prejudice to Lone Star. The order, see note 8, supra, was one dismissing the case. This has all of the earmarks of a ruling on the merits. To overcome the plea of res judicata in a subsequent suit brought in some other state, the burden would be on Lone Star. Even more troublesome might be the question of statutes of limitations especially in the light of the choice-of-law-rules when and as Lone Star pursued Citroen in some other jurisdiction. This conceivably could become more complicated if, on the trial of the merits in a non-Texas forum, some phases of contractual duty and breach arose out of collateral non-written implied agreements or undertakings which would be barred under the Texas two-year statute, rather than the four-year statute covering written contracts.[12]

On the other hand, to the extent that the cause was completely safe from the perils of res judicata or statute of limitations, allowance of the proposed amendment was all the more sensible, a contrary course, all the more unfounded. For on this hypothesis, all Lone Star had to do was file a new suit in the State Court and set out the facts of its proposed amendment. Whereupon Citroen would again remove. If Citroen recognized that a motion to quash would be unavailing an answer on the merits would be filed without more. If Citroen thought the facts still inadequate under International Shoe concepts, another motion to quash would be filed. To sustain this motion, Citroen would then have to engage in the legal travail of research and briefing. It would thus undergo the very labor it now urges was a theoretical basis for the Trial Court's action of denying leave.

 On no substantial ground, therefore, was the denial of leave to amend supportable. Neeff v. Emery Transportation Co., 2 Cir., 1960, 284 F. 2d 432. In the face of a rule which commands that leave "shall be freely given when justice so requires" this

11. See, e. g., Bluff Creek Oil Co. v. Green, 5 Cir., 1958, 257 F.2d 83, 85–86, and National Gas Appliance Corp. v. AB Electrolux, 7 Cir., 1959, 270 F. 2d 472, 475, sustaining a recent Illinois statute; Stanga v. McCormick Shipping Corp., 5 Cir., 1959, 268 F.2d 544, 549–550, Parts V and VI; and the very detailed discussion by Judge Barnes for the 9th Circuit in L. D. Reeder Contractors of Arizona v. Higgins Industries, Inc., 1959, 265 F.2d 768.

Cutting a big figure in counsel's forecast of validity was the impact of McGee, the counter impact, if any, of Hanson, and the case law then being built up in the various circuits. For example, the 7th Circuit looked upon Hanson as limiting McGee to insurance, Trippe Manufacturing Co. v. Spencer Gifts, Inc., 7 Cir., 1959, 270 F.2d 821, 822, whereas we expressed the view that the Supreme Court "majority did not indicate that it was taking back anything said in McGee, International Shoe Co. or Vanderbilt [Vanderbilt v. Vanderbilt, 354 U.S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456] * * *," Roumel v. Drill Well Oil Co., 5 Cir., 1959, 270 F.2d 550, 557.

12. Tex.Civ.Stat. arts. 5526 and 5527.

negative record satisfied Lone Star's burden. With the consequences of an outright dismissal so decisive and perhaps final, the minimum required, as was done by us in Stanga v. McCormick,[13] was to give the plaintiff an opportunity of obtaining jurisdiction over the defendant. Here that takes the form of allowing the filing of the proposed amendment.

■ In this respect the case is comparable to one in which a judgment of dismissal for failure to state a claim is ordered under F.R.Civ.P. 12(b) (6). In most of such cases the unsuccessful plaintiff or defendant must be given an opportunity of filing an amendment unless it appears reasonably certain that under the accepted test no evidence is available to make out a claim or defense. 3 Moore, Federal Practice § 15.10.

Consequently, the judgment of dismissal must be set aside and the cause remanded with leave to the plaintiff to file the proposed amendment and for other appropriate consistent proceedings.

Reversed and remanded.

JONES, Circuit Judge (concurring specially).

I see no reason for the saying of much that the majority says in holding that the appellant should be permitted to amend. A party is entitled to amend once as a matter of course at any time before a responsive pleading is filed. Rule 15(a), Fed.Rules Civ.Proc., 28 U.S.C.A. Motions are not responsive pleadings. 1 A Barron & Holtzoff, Federal Practice and Procedure 714, § 443. The amendment was intended to supply the deficiencies noted by the District Court in its opinion. See Note 4 of the opinion of the majority. The amendment was tendered before the order of dismissal was entered. Even if the order had preceded the tender of the amendment, the entry of the

order of dismissal without leave to amend would have been error. Dowdy v. Procter & Gamble Manufacturing Company, 5 Cir., 1959, 267 F.2d 827. These principles are settled and, for my part, determine the question of the right to amend. I see no reason to say more on that question.

Whether, as the majority has determined, Rule 15(a) declares "an affirmative policy," and whether the terms in which it does so are "emphatic," seems to me to be unimportant, although it might be difficult to find the source of the dramatic emphasis attributed to this particular clause of the Rules. The first and only amendment tendered by the appellant was the one which the district court disallowed. Why then does the majority find it necessary to say that, where leave to file an amendment is required, the provision of the rule that "leave shall be freely given" is not a "mechanical absolute?" I might add that this phrase is one which I have not before encountered. "Mechanical" has to do with tools or machines. Cf. Mullinnix v. State, 42 Tex.Crim.R. 526, 60 S.W. 768. In the smaller dictionaries that most of us use the word "absolute" is an adjective. "Its most ordinary signification is 'unrestricted' or 'unconditional.'" Columbia Water-Power Co. v. Columbia Electric Street Railway Light and Power Company, 172 U.S. 475, 19 S.Ct. 247, 43 L.Ed. 521. In metaphysics and in theology and perhaps in physics, chemistry, and others of the more exact sciences, "absolute" has a meaning as a noun, but not in any sense here germane. The task of writing the headnote for this gloss upon the rule is not mine and I do not envy him who has it.

Much else of what is said, while possibly sound in law and logic, does not seem to me to be essential to the decision of the questions presented by this appeal.

13. Stanga v. McCormick Shipping Co., 5 Cir., 1959, 268 F.2d 544. See Parts XII and XIII, at page 554.