George S. JACOBS et ux., Appellants,

v.

Dr. Louis M. THEIMER, Appellee.

No. 17500.

Court of Civil Appeals of Texas, Fort Worth.

Feb. 22, 1974.

Rehearing Denied March 22, 1974.

Bean, Francis, Ford, Francis & Wills, and Strasburger, Price, Kelton, Martin & Unis, and Royal H. Brin, Jr., Dallas, for appellants.

Fillmore, Lambert, Farabee & Purtle, and Glynn Purtle, Wichita Falls, for appellee.

## OPINION

MASSEY, Chief Justice.

Dr. Louis M. Theimer, defendant, was granted summary judgment that plaintiffs George S. Jacobs and his wife take nothing by their suit for damages against him in the nature of a malpractice suit. Plaintiffs appealed.

Affirmed.

Mrs. Jacobs was a patient of the doctor, an obstetrician. In the first trimester of her pregnancy she became ill with rubella (German measles). As result thereof her child was born with defects of brain, speech, sight, hearing, kidneys, and urinary tract, etc. In attention to the child plaintiffs have undertaken and incurred very great expenses. It is obvious that the condition of the child and the attendant expenses incident thereto has had deleterious effect upon plaintiffs' family, physical, emotional, and financial.

Such consequent damages were alleged to have been suffered because the doctor negligently failed to initiate and perform tests which would have disclosed the fact that plaintiff's wife had experienced rubella at the material time, and negligently failed to inform plaintiffs of such fact, which he should have known in the exercise of the requisite degree of care of a doctor to his patient; that had he not been thus negligent, but, in obedience to his duty had ascertained the fact and timely informed plaintiffs of the fact they would have had resort to medical or surgical abortion procedures at the fetal stage whereby their child would not have been born and there would have been no damages. Stated another way: the allegation of the suit is that the doctor negligently failed to discharge his duty of administering proper medical treatment in that he failed to inform plaintiffs so that they would have been enabled to make the deci-

sion upon that abortive action which allegedly they would have taken had the doctor's duty been performed.

In January, 1973, the Supreme Court held in Roe v. Wade, 410 U.S. 113, 93 S. Ct. 705, 35 L.Ed.2d 147, that Texas laws proscribing abortions were unconstitutional as violative of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

Cancelled, as unconstitutional, were the provisions of Vernon's Ann.P.C. Art. 1191, "Abortion"; Art. 1192, "Furnishing the means"; Art. 1193, "Attempt at abortion"; Art. 1194, "Murder in producing abortion"; Art. 1195, "Destroying unborn child"; and Art. 1196, "By medical advice". In part, at least, the following civil statutes were likewise invalidated: Vernon's Ann.Texas St. Title 71, "Health—Public," Ch. 6, "Medicine", Art. 4505, "May refuse to admit [certain] persons"; and Art. 4506, "Revocation, cancellation or suspension of license."

A question exists, important here, as to whether by the Supreme Court's declaration of unconstitutionality such laws were "as though they had never been"; or whether action, or the withholding of action—in conformity with such law—afforded protection to him who had performed or withheld action.

The preparation of the opinion in Roe v. Wade by the Supreme Court occasioned exhaustive research, findings pursuant to which were set out in its opinion. Subsequently there has been tremendous interest by the American public in the declaration that the Texas law was unconstitutional. There have been opinionated statements by spokesmen for various of the factions subsequently formed, both supporting and attacking the action of the Supreme Court. Of the publicized statements the overwhelming majority, both in support and in attack upon its holding, stand exhibited as made without an examination of the Supreme Court opinion. Most have claimed support by theoretical, biblical or canonical precedents actually nonexistent.

If, despite the binding declaration of unconstitutionality, we might properly hold that the Doctor (had he been aware of the fact of rubella during the first trimester of pregnancy) was under no legal duty to do or say anything which the plaintiffs might in turn act upon by seeking to have the wife's pregnancy terminated by abortion, the case is one as to which we may find legal authority aiding in out disposition of the case. We have noted that there was no known medical treatment which would have aided or corrected the condition of the embryo which became the child of the plaintiffs.

■ The general rule is that an unconstitutional statute is simply a statute in form, and not law, and under every circumstance or condition lacks the force of law, having no more saving effect to justify action taken under it than as though it had never been enacted. This philosophy of the law was honored in Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914). However at an earlier time the contrary view was taken by the Texas Supreme Court in Sessums v. Botts, 34 Tex. 335 (1870). Therein its decision was to the effect that, although a statute regulating the collection of judgments and debts was unconstitutional, it nevertheless, until held to be invalid, protected from civil liability such officers as obeyed its provisions and relied on its validity.

It was written in Sessums v. Botts, supra, as follows: "It is therefore deemed advisable for every good citizen to obey whatever may be promulgated by the law-making power as law, until the same shall have been passed upon by the courts of the country in a legitimate and proper manner. If this, then, is the duty of the citizen, and he obeys or submits to whatever has received the legislative sanction as law, then he should be protected in that obedience, . . . . It is true that when an act has been declared unconstitutional, then it is as though it had never been; but we do not think that the author in the text, or the cases cited by him, intended to announce

the doctrine that an unconstitutional law could be no protection to officers or citizens, before the same had been passed upon and adjudged invalid."

The Seesums v. Botts case was found among the cases annotated at 53 A.L.R. 268, Annotation: "Unconstitutional statute or veto as protection against civil or criminal responsibility for act or omission in reliance thereon." The annotation section is rather brief, though informative. It follows the case of Texas Company v. State of Arizona, 254 P. 1060, 53 A.L.R. 258 (Arizona Supreme Court, 1927), in which note is taken of the two distinct lines of authority in the United States, with examples of each given. The holding made in the case, however, is like unto that of Sessums v. Botte, from which we have quoted.

In 16 Am.Jur.2d, p. 405, "Constitutional Law", Sec. 178, "Protection of rights" it is stated that the contrary is the majority rule, with other positions occasionally taken.

The rule of Sessums v. Botts, supra, though by the Reconstruction Court, has been acknowledged as proper to be followed. See Travelers' Ins. Co. v. Marshall, 124 Tex. 45, 76 S.W.2d 1007, 1024, 96 A.L.R. 802 (1934); Sharber v. Florence, 131 Tex. 341, 115 S.W.2d 604 (1938); and Wichita County v. Robinson, 155 Tex. 1, 276 S.W.2d 509, 515 (1954). The United States Court of Appeals for the Fifth Circuit recognized that such was the rule by Texas law in Lone Star Motor Import, Inc. v. Citroen Cars Corp., 5 Cir., 288 F.2d 69, 76 (1961).

On the foregoing, however, the plaintiffs have pointed out that the action, or omission to act by making the discovery and disclosure thereof to plaintiffs (so that they would have had an opportunity to timely resort to curative measures of abortion) was *not* because of the doctor's reliance upon the state of Texas law apparently in force at the time. Of this we have little doubt. Certainly any jury would be entitled to believe that had the doctor dis-

covered that the wife of the plaintiff had contracted rubella when she did he would have told her of it and would have explained the probable effect on the embryo. Indeed the evidence from the doctor himself is to that effect.

For purposes of summary judgment we are bound to treat the case as one where the doctor negligently failed to make discovery and/or neglected or failed to make disclosure to the plaintiffs.

On this the plaintiffs have, by a communication which we treat as a supplemental brief, represented: "In connection with another question that came up at oral argument, it is our position that a person may be able to benefit from a *valid* statute as a defense although his conduct was not in reliance on it, but that one may base a defense on an *invalid* statute only if he did in fact rely upon it, and that this is what such cases as Lone Star Motor Imports v. Citroen Cars Corp., 288 F.2d 69 (5th Cir.), are holding."

■ Our holding is that one is entitled to base a defense on an invalid statute apparently in effect although his conduct in conformity therewith was not in reliance on it—up until the time of its "invalidation"—exactly as is his entitlement to base a defense on a valid statute where, likewise, his conduct was not in reliance on it. We find nothing in the cases relied upon by the plaintiffs which hold the contrary to be the law. We confess that we have not found an authority holding identically.

■ In the instant case we have concluded that from a legal standpoint the doctor's negligence (to be presumed) would not alter the case; that the situation would be no different from that which would have obtained if the doctor, with knowledge of the fact that the plaintiff's wife had experienced the rubella and that there would probably be deleterious effect on the embryo, refrained from informing his patient of the fact in the belief that so to do would make him an accessory (at least of

the husband of his patient) should plaintiffs elect to procure a criminal abortion. In effect prior to January 1, 1974, was V. A.P.C., Art. 70, "Who is an accomplice", in which it was stated that one who prepared aid of any kind prior to the commission of an offense would be an accomplice.

The doctor was licensed under Texas law and was practicing in Texas. He was bound by Texas law. Although he might have been aware that elsewhere abortion was a legally recognized medical or surgical procedure to which persons in position like unto that of plaintiffs might resort, that knowledge would not legally alter his relation to his patient. Such knowledge played no part in the relationship of doctor to patient under the then state of Texas law. Under Texas law abortion in such a case was stated to amount to a crime. Under Texas law there was not an existing duty to disclose to his patient knowledge calculated to result in action by a third person upon the body of the patient which Texas law proscribed as criminal. Perforce the decision in Roe v. Wade by the United States Supreme Court the obligation might subsequently be otherwise, a question not presently presented for determination.

Anyway, our decision is that a defendant should not be penalized because his conformity to law was through ignorance rather than because the law so required. He should be given credit for his conformity, or at least not punished because of it, regardless of his reasons therefor.

If we are correct in the foregoing conclusion and holding we must proceed to treat the case as one in which Texas law should be accorded force and effect until January, 1973, when Roe v. Wade was decided by the United States Supreme Court.

With the case thus treated there appears unanimity in decisions bearing thereupon. They are to the effect that persons in the position of the plaintiffs do not possess a cause of action of which the courts take cognizance. Under Texas procedure that means that an actionable cause of action is not thereby presented. Dismissal in such situation would be proper. Of course, it is also true that in such a case a defendant's motion for summary judgment should be sustained, if made and presented.

Cases bearing thereupon are Gleitman v. Cosgrove, 49 N.J. 22, 227 A.2d 689 (1967); and Stewart v. Long Island College Hospital, 35 A.D.2d 531, 313 N.Y.S.2d 502 (1970), appeal dismissed by Court of Appeals of New York as only appellant, Rosalyn Stewart (the infant child), not aggrieved by the modification of the Appellate Division at 264 N.E.2d 354 (1970). The reasoning behind the New Jersey view has been soundly condemned by commentators. Thereon plaintiffs cite Prosser, Torts (3rd Ed., 1964) Sec. 51, pp. 914–916; Gregory, Vicarious Responsibility & Contributory Negligence, 41 Yale L.Jrnl. 831; James, Imputed Contributory Negligence, 14 La.L.Rev. 340, 354. Informative, though not on the precise question are cases in 22 A.L.R.3d 1441, Annotation: Tort Liability For Wrongfully Causing One To Be Born"; and the case of Terrell v. Garcia, 496 S.W.2d 124 (San Antonio Civ. App., 1973, writ ref., n.r.e.).

We are convinced that at all material times the public policy of the State of Texas was one which declared any proposed abortion to be illegal. Therefore, if plaintiffs had been by the doctor provided with the option to consider resort to abortive surgery or treatment to Mrs. Jacobs that too would have been contrary to public policy. In that aspect, in our opinion, there was—at the material time—no duty on the part of the doctor to give the information to plaintiffs which would have provided that option. As already noticed the doctor did not have the information, but, for purposes of summary judgment, the case is viewed as one where he did have (or should have learned of) the information which would have provided the option but nevertheless withheld the same from his patient and her husband.

In essence the instant holding and opinion is one which is to be treated as written upon the state of Texas law as it was before January, 1973, when the Supreme Court of the United States handed down its decision in Roe v. Wade. It is not necessarily an authority for a Texas case in which facts and circumstances material to a proper decision might arise subsequent thereto, when Texas law theretofore obtaining must for all purposes be treated as invalid.

Judgment is affirmed.