**Johnny B. STEVENSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 928–85**

Court of Criminal Appeals of Texas, En Banc.

May 25, 1988.

Gerald L. Brantley, Abilene, for appellant.

Jorge A. Solis, Former Dist. Atty. & Paul Campolo, Asst. Dist. Atty., Abilene, Robert Huttash, State's Atty. & Alfred Walker, First Asst. State's Atty., Austin, for the State.

OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted of forgery and punishment was assessed at ten years imprisonment. The Eastland Court of Appeals ruled that the trial court had improperly denied appellant's speedy trial motion, reversed the conviction, and ordered the prosecution dismissed. The State petitioned this Court for discretionary review, which we granted to consider the constitutionality of Art. 32A.02, V.A.C.C.P., hereinafter the Speedy Trial Act.

A majority of this Court recently declared the Speedy Trial Act unconstitutional and void in its entirety. *Meshell v. State,* 739 S.W.2d 246 (Tex.Cr.App.1987).

The holding in *Meshell*, supra, announced that by enacting the Speedy Trial Act the Legislature had violated the separation of powers doctrine under Article II, § 1 of the Texas Constitution. Meshell's motion for leave to file a motion for rehearing was denied November 4, 1987. We recently held that an unconstitutional statute is void from its inception and cannot provide a basis for any right or relief. *Jefferson v. State*, 751 S.W.2d 502 (Tex.Cr.App.1988). See also 12 Tex.Jur.3d, *Constitutional Law*, § 41, at 548 (and cases in n. 33 thereof).

We therefore find that based upon the decision in *Meshell*, supra, the Court of Appeals improperly sustained appellant's Speedy Trial Act claims on appeal. We reverse the Court of Appeals' disposition of the claims and remand the case to that court for consideration of appellant's other points of error.

MILLER, Judge, concurring.

I concur with the majority only because appellant's speedy trial motion was denied by the trial court in this cause. I disagree, however, with the majority's holding that the Speedy Trial Act cannot provide a basis for any right or relief since it has been declared unconstitutional. I believe the majority's retroactive application of the unconstitutionality of the Speedy Trial Act, Art. 32A.02, V.A.C.C.P., (hereinafter referred to as the Act) could, in certain applications, deprive a defendant of a substantial right under the Act and in effect amount to a violation of the ex post facto principles embodied in due process. Specifically I refer to a defendant who has been successful in asserting a speedy trial act claim and who has secured a final judgment towards that end.

Remembering that neither the Constitution of the United States nor of Texas prohibits or requires retroactive application of a judicial decision, see *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), in the interest of justice and to avoid the prohibition against ex post facto laws (see Art. I, § 16 of the Texas Constitution), we should apply the holding in *Meshell v. State*, 739 S.W.2d 246 (Tex.Cr. App.1987), only prospectively as to defendants whose speedy trial motions were granted by the trial court and who have secured final judgments evidencing same.

Not surprisingly, I do not agree with the majority's holding that a defendant never acquires any rights under the Act because it was declared unconstitutional subsequent to the commission of his offense. The purpose of the Act was to prevent prosecutorial delay and to ensure the wheels of justice kept turning. *Barfield v. State*, 586 S.W.2d 538 (Tex.Cr.App.1979), and *Valadez v. State*, 639 S.W.2d 941 (Tex. Cr.App.1982). The Act established a means by which a defendant may obtain dismissal of charges on which the State seeks to try him, if the State is not ready for trial within a prescribed period of time. *McLean v. State*, 638 S.W.2d 124 (Tex.App. —Fort Worth 1982) review refused. This dismissal of the charges is done "with prejudice", which prevents further prosecution of the accused for that alleged crime. Thus, the accused could successfully invoke a substantial right to prohibit prosecution under the Act.

As to the purported ex post facto deprivation of this right, there are two elements that must be present for a criminal law to be ex post facto: the law must be applied retroactively and be more onerous than the law in effect on the date of the offense. *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). The traditional definition of an ex post facto law is any *statute* which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for the crime, after its commission, or which deprives a person charged with a crime of any defense available according to law at the time the act was committed. *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925).

The ex post facto clause does not of its own force apply to the Judicial branch of the government. *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). The Supreme Court, however, held in *Bouie v. City of Columbia*, 378 U.S.

347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), that:

> An unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids ... If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

In *Love v. Fitzharris*, 311 F.Supp. 702 (U.S.Dist.Ct., N.D.Calif.), affirmed 460 F.2d 382 (9th Cir.1972), dismissed as moot 409 U.S. 1100, 93 S.Ct. 896, 34 L.Ed.2d 682, the District Court interpreted that holding in *Bouie*, supra, to mean that the ex post facto principle in all its ramifications applied to *any change in the law, whether by legislative amendment, judicial construction, or administrative re-interpretation.* Although the case at bar does not involve enlargement of a criminal statute as in *Bouie*, supra, in situations where a substantial right such as we are dealing with here has been secured by a final judgment, I likewise would apply the ex post facto principle to a "judicial" holding.

The Supreme Court, following the definition in *Beazell*, supra, has held that no ex post facto violation occurs if the change affected is merely procedural and does "not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt." *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884). The Supreme Court has also held, however, that the alteration of a *substantial right* is not merely procedural, even if the statute takes a seemingly procedural form. *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), (emphasis added). See also *Kring v. Missouri*, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1882).

The Supreme Court in *Beazell*, supra, recognized that there is no definitive standard to determine whether a procedural change amounts to alteration of a substantial right so as to be an ex post facto violation. The Court stated at 269 U.S. at 171, 46 S.Ct. at 69:

> Just what alterations of procedure will be held to be of sufficient moment to transgress the constitutional prohibition cannot be embraced within a formula or stated in a general proposition. The dis-

tinction is one of degree. But the constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation, see *Malloy v. South Carolina*, 237 U.S. 180, 183, 35 S.Ct. 507 [508], 59 L.Ed. 905, and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance, [citations omitted].

The *Meshell* case lead to the alteration of a substantial right of the accused and not merely of a procedure which could operate to the benefit of the accused if affirmatively invoked. I believe that this alteration is of such degree as to be an ex post facto violation when applied to defendants whose cases were dismissed, for violation of the Act, in a judgment that became final prior to this Court's announcement that the Act is unconstitutional.

There can be no question that both of the *Weaver v. Graham* criteria are met in such a situation. Today the majority blanketly applies our holding in *Meshell*, supra, that the Speedy Trial Act is unconstitutional, retroactively. The majority follows the general rule that an unconstitutional statute is void ab initio and that therefore the Act cannot provide any basis for relief for appellant in this cause or for any other defendant who unsuccessfully asserted his rights under the Act prior to our declaration of its unconstitutionality. As previously stated, the effect of the holding in *Meshell*, supra, is to deny a defendant relief under the Act, which relief is dismissal of the charge against him and a bar to reprosecution, and to allow the State to proceed upon the charge originally filed against him. This change in the law accomplished in *Meshell*, supra, does not merely change the manner in which a trial is conducted but operates in a substantial manner to the disadvantage of the defendant. See *Beazell*, supra. Thus, the retroactive application of our holding in *Meshell*, supra, has a more onerous effect on a defendant who has secured a final dismissal under the Act.

The general rule that an unconstitutional statute is void and therefore retroactive, however, is not without exception. See e.g. *Sessums v. Botts*, 34 Tex. 335 (1870); *King v. King*, 291 S.W. 645 (Tex.Civ.App.—San Antonio 1927, writ dismissed w.o.j.); *Lone Star Motor Import, Inc. v. Citroen Cars Corporation*, 288 F.2d 69 (5th Cir.1961). As mentioned earlier, I would find an ex-

ception to this general rule where a defendant would be denied a substantial right secured by a final judgment. The Speedy Trial Act accorded a defendant the substantial right to end his prosecution, and if he affirmatively and successfully invoked that right it should not subsequently be denied because of our holding in *Meshell*, supra, that the Act is unconstitutional. The majority's retroactivity holding would in that scenario deprive a defendant of any successfully asserted rights under the Speedy Trial Act.

Because appellant's speedy trial motion in this cause was denied by the trial court, appellant never acquired the substantial right to have the charge against him dismissed with prejudice. Thus, there is no ex post facto violation when the holding in *Meshell*, supra, is applied retroactively to appellant. For this reason, I concur with the majority.

CLINTON, Judge, dissenting.

It is not correct to say that the Eastland Court of Appeals "improperly sustained appellant's Speedy Trial Act claims on appeal," as the majority does. The Eastland Court properly entertained appellant's single ground of error complaining that the trial court had erred in refusing to grant his motion to dismiss in that the State was not ready for trial within the requisite period of time. Upon consideration of that complaint the Eastland Court found from the record that the State had not ever declared it was ready within that period, held that it had thus failed to comply with the Act and, therefore, reversed the judgment of the trial court and ordered the prosecution dismissed.

The decision of the Eastland Court disposed on the only ground properly presented to it. Constitutionality of the Act was never an issue in the case in the trial court or in the Eastland Court. The State failed to contest the sole reason for the decision or to challenge constitutionality of the Act by motion for rehearing or otherwise before the Eastland Court. Thus there is nothing in its decision for this Court to review. *Prince v. State*, (Tex.Cr.App. No. 763–82, delivered March 4, 1987).[1]

The general rule stated in the majority opinion is not without exceptions. 12 Tex. Jur.3d 548–549, Constitutional Law § 41. One is that equitable rights may be acquired before declaration of unconstitutionality is made such that they are not lost thereafter. For example, a judgment rendered under an unconstitutional statute nevertheless retains its binding effect. *Ibid*; 48 Tex.Jur.3d 399, Judgments § 351, citing *King v. King*, 291 S.W. 645 (Tex.Civ. App.—San Antonio 1927) writ dismissed w.o.j., *viz*:

"It is true and well settled by authority that an unconstitutional act confers no right, imposes no duty, and affords no protection [citations omitted]; but that is not the question here. The question here is that there is a judgment by a court of competent jurisdiction in favor of appellee against appellant settling all the issues in that case that are involved here, unreversed and still in force. It makes no difference whether the court committed an error of law in its ruling or not that would merely go to the error of the court, subject to correction on appeal, and for that matter voidable, but not void ab initio, so as to render it assailable as a void judgment in a collateral attack."

*Id.*, at 648; see also *Sharber v. Florence*, 131 Tex. 341, 115 S.W.2d 604 (1938).

The exception is not reserved alone for judgments. "While as a general rule a law held unconstitutional is void from the beginning and was never valid and enforceable at any time, nevertheless those obeying the law before its invalidity was determined are not to be punished, but on the contrary their rights are to be protected." *Wichita County v. Robinson*, 155 Tex. 1, 276 S.W.2d 509 (1955) (On Motion for Rehearing, at 515). "Equitable rights may be acquired though the statute is thereafter declared unconstitutional. [citations omitted]." *Id.*, at 516. Thus, though the Supreme Court declared an act unconstitutional, it would be inequitable under the circumstances presented to require a tax collector paid compensation under the void act to repay that amount to Wichita County. *Ibid.*

Resort may be had to benefits of a statute until such time as it is declared uncon-

---

1. Disposition of this cause is not controlled by *Robinson v. State*, 739 S.W.2d 795, (Tex.Cr.App. 1987). *Robinson* was before this Court on direct appeal and thus our discretionary review was not implicated. Moreover, unlike *Robinson* appellant has obtained a judgment in his favor from the court of appeals, which in the circumstances of this cause is binding on the parties.

stitutional. *Lone Star Motor Import, Inc. v. Citroen Cars Corp.*, 288 F.2d 69, at 76 (CA5 1961).

The judgment of the Eastland Court of Appeals was correct when rendered, and this Court is not authorized to disturb it. *Jefferson v. State,* 751 S.W.2d 502 (Tex.Cr.App.1988) (Clinton, J., joining dissenting opinion by Duncan, J.). Accordingly, the petition for discretionary review should be dismissed.

I respectfully dissent.

DUNCAN, Judge, dissenting.

I, in general agree with Judge Miller's observations and conclusions as set forth in his Concurring Opinion that the acquisition of a substantial right is an exception to the general rule that an unconstitutional statute is void from its inception. However, based on my opinion in *Jefferson v. State,* 751 S.W.2d 502 (Tex.Cr.App.1988), I dissent.

TEAGUE and CAMPBELL, JJ., join this opinion.